408 So.2d 666 (1981)
Julia McCain LAMPKIN-ASAM, Appellant,
v.
MIAMI DAILY NEWS, INC., a Florida Corporation, D/B/a the Miami News, and Timothy Johnson, As Personal Representative of the Late Terry Johnson King, Appellees.
No. 80-2053.
District Court of Appeal of Florida, Third District.
December 29, 1981.
Rehearing Denied January 27, 1982.
*667 Joel V. Lumer, Miami, for appellant.
Joseph P. Averill, Miami, for appellees.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Julia McCain Lampkin-Asam, the plaintiff below, wrote a book describing the events which, in Asam's view, had precluded her from receiving research grants for almost a decade and developing a cure for cancer. A major theme of the book, entitled "Malignant Intrigue," was that Asam's professional competence as a cancer scientist had been disparaged and her mental stability questioned by people in the "cancer establishment." Asam's book identified one Dr. Wilhelmina Dunning, her former supervisor, as the primary villain whose statements concerning Asam had contagiously spread through the cancer research community so as to create, as the plaintiff's title aptly put it, a malignant intrigue.
In 1973, Asam, wanting to draw public attention to her research and need for research funds, brought her 753-page book to the attention of The Miami News. The late Mrs. Terry Johnson King, then Lifestyle Editor of the News, interviewed Asam and decided to write a column about "Malignant Intrigue" and its author. King read the book and concluded that it was a rather vitriolic attack on Dr. Dunning. King decided to get Dunning's side of the story before writing her column and interviewed Dunning on the phone. King then wrote the column, which, overall, was an unflattering evaluation of the plaintiff's malignant intrigue theory. The column included a quote about Asam attributed to Dunning:[1]
"To which the highly respected Dr. Dunning says, `She [Asam] is very emotionally disturbed, and has no qualifications to do cancer research. She may have gotten *668 her doctorate from George Washington University, but I suspect they gave her the degree to get rid of her.'"
Asam then sued Dunning,[2] The Miami News, and Mrs. King alleging defamation. From a summary judgment entered in favor of The Miami News and the estate of Mrs. King, Asam appeals.
We affirm the summary judgment. The determination that a person is a public figure is properly for the court. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Gadsden County Times, Incorporated v. Horne, 382 So.2d 347 (Fla. 1st DCA 1980); Belli v. Orlando Daily Newspapers, Inc., 389 F.2d 579 (5th Cir.1968); Logan v. District of Columbia, 447 F. Supp. 1328 (D.D.C. 1978); Hoffman v. Washington Post Co., 433 F. Supp. 600 (D.D.C. 1977), aff'd, 578 F.2d 442 (D.C. Cir.1978). Asam's efforts to arouse public indignation and influence the allocation of public funds, Gibson v. Maloney, 231 So.2d 823 (Fla. 1970), second appeal, 263 So.2d 632 (Fla. 1st DCA 1972); Murphy v. Daytona Beach Humane Society, Inc., 176 So.2d 922 (Fla. 1st DCA 1965); participation in public debates on public health matters, Yiamouyiannis v. Consumers Union of the United States, Inc., 619 F.2d 932 (2d Cir.), cert. denied, 449 U.S. 839, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980); Exner v. American Medical Association, 12 Wash. App. 215, 529 P.2d 863 (1974); publication and distribution of the autobiographical "Malignant Intrigue" and other writings, lectures and speeches, and efforts to seek substantial publicity, including the very publicity which is the subject matter of this action, Hotchner v. Castillo-Puche, 551 F.2d 910 (2d Cir.), cert. denied sub nom. Hotchner v. Doubleday & Company, Inc., 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977); Buckley v. Littell, 539 F.2d 882 (2d Cir.1976); Guitar v. Westinghouse Electric Corporation, 396 F. Supp. 1042 (S.D.N.Y. 1975), among other things, aggregately show her, as a matter of law, to be a public figure. Wolston v. Reader's Digest Association, Inc., 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); Hutchinson v. Proxmire, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979).
Asam's status as a public figure requires her to establish that the newspaper and Mrs. King acted with actual malice in the constitutional sense, Curtis Publishing Company v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), that is, the publication involved was deliberately falsified or published recklessly despite the publisher's awareness of probable falsity, New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Gibson v. Maloney, supra. Viewing the evidence most favorably to the plaintiff, to determine whether there exists a genuine issue of material fact upon which a reasonable jury could find with convincing clarity that the defendants acted with such actual malice,[3] we find absolutely no clear and convincing *669 evidence that the defendants knew that the information published was incorrect or that the defendants had any degree, much less a high degree, of awareness of the probable falsity of this information. See Long v. Arcell, 618 F.2d 1145 (5th Cir.1980).
Mrs. King's testimony in her deposition is, unequivocally, that she accurately quoted Dr. Dunning. On the other hand, Dunning's testimony is that she was "not sure" if she made the statements. Dunning doubted that she would remember the contents of a conversation which took place years before. While she did not recall the conversation with Mrs. King, she admitted some recollection of the book being reviewed, and because "... I had been maligned in the book, she might have contacted me to find out if the statements were true." Dunning believed she was "misquoted," because she would not have said those things "in that form." She admitted that responses could possibly have been drawn from her in a succession of questions which could account for the eventual form of the statement attributed to her. Apart from whether she revealed it to Mrs. King during the telephone interview, it was, in fact, Dunning's opinion that George Washington University might have given Asam her degree to get rid of her. Dunning admitted she could have said that the plaintiff was "not qualified to do independent cancer research." But most significantly, Dunning said that if she made the remarks attributed to her by Mrs. King, she made them facetiously and did not "grant permission to anybody to publish such a facetious remark."
In Long v. Arcell, supra, the Fifth Circuit affirmed a judgment notwithstanding a jury verdict of compensatory and punitive damages in favor of a defamation plaintiff. The litigation was prompted by the newspaper article which stated that an ambulance service may have violated the law by operating without a license from the State Board of Health. The reporter testified that he was told by two Board of Health employees that the ambulance service had not been licensed. At trial, one Board of Health employee directly contradicted the reporter's testimony, saying that he told the reporter that the ambulance service was licensed to operate. Moreover, the ambulance service's lawyer asserted that, on the day before publication, he read the reporter a letter from the other Board of Health employee which stated that the ambulance service was authorized to operate. The Fifth Circuit held, 618 F.2d at 1148-49:
"The plaintiffs' case rested almost entirely upon the testimony of Bradshaw [a Board of Health employee] and Wilson [the attorney for the ambulance service]. Theirs was the only testimony relating directly to the defendant's state of mind. There was no documentary evidence which showed that the defendants knew their article was false or entertained serious doubts about its accuracy.[[4]] In sum, the jury was left to decide the case based on the conflicting accounts of the conversations described above. If the applicable burden of proof had been a preponderance of the evidence, a jury verdict either way would have to stand. Similarly, if liability could be imposed on a clear and convincing showing of negligence, we would be hard pressed to disregard the jury's verdict. We repeat, however, that the plaintiff's burden was to prove actual malice by clear and convincing evidence that the defendants knew that their information was incorrect or had a `high degree of awareness of ... [its] probable falsity.' (citation omitted).

*670 "Although the Constitution neither condones nor encourages careless journalistic practices, the journalist who merely is careless may not be held liable for defaming a public figure. That is because the interests we must consider in libel cases are not only those of the defamed and the defamer. If they were, the former would prevail with a greater degree of frequency. In all libel suits between a public figure and a publisher the public intervenes as a matter of right, and its interest must be considered. Only by limiting liability to those situations in which the publisher has acted with actual malice do we fully protect the public's right to the benefits of a free and uncensored press."
Where, as in the present case, the person to whom the quoted words are attributed has not unequivocally denied making the statement attributed to her; has denied only the form, but not the substance, so as not to rule out the possibility that she was mistakenly, but immaterially, misquoted; and has indeed allowed that she may have actually made the statements "facetiously"; the requisite high standard of proof is simply not met.[5]In re McDonough, supra ("that high standard of proof usually would require more than one man's word against another, especially where, as here, mistake can not be ruled out.").
Our holding makes it unnecessary to consider the other contentions made by the appellees in support of the summary judgments, and we expressly do not rule upon them.
Affirmed.
NOTES
[1] The column also characterized the charges made by Asam in her book as "almost paranoical." Since we find King's characterization to be an expression of opinion based on facts set forth in the column, it is, in our view, entitled to absolute constitutional protection. From v. Tallahassee Democrat, Inc., 400 So.2d 52 (Fla. 1st DCA 1981). In Gertz v. Robert Welch, Inc., 418 U.S. 323, 329-340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974), the Supreme Court said:

"[U]nder the First Amendment, there is no such thing as a false idea. However pernicious an opinion might seem, we depend upon its correction not on the conscience of judges or juries but on the competition of other ideas."
See also Palm Beach Newspapers, Inc. v. Early, 334 So.2d 50 (Fla. 4th DCA 1976); Hotchner v. Castillo-Puche, 551 F.2d 910 (2d Cir.), cert. denied sub nom. Hotchner v. Doubleday & Company, Inc., 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977); Loeb v. Globe Newspaper Co., 489 F. Supp. 481 (D.Mass. 1980). Therefore, we devote the remainder of this opinion to the Dunning statement.
[2] Dunning was earlier favored with a summary judgment. Asam's appeal from that judgment was dismissed by this court as untimely filed. Asam unsuccessfully sought relief in the Florida Supreme Court from this dismissal. Lampkin-Asam v. District Court of Appeal, 364 So.2d 469 (Fla. 1978).
[3] This is the well-accepted test for evaluating the propriety of a summary judgment in a defamation case where actual malice in the constitutional sense must be shown. See Yiamouyiannis v. Consumers Union of the United States, Inc., supra; Long v. Arcell, 618 F.2d 1145 (5th Cir.1980); Hahn v. Sargent, 523 F.2d 461 (1st Cir.), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); Guam Federation of Teachers, Local 1581 v. Ysrael, 492 F.2d 438 (9th Cir.), cert. denied, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974); Nader v. deToledano, 408 A.2d 31 (D.C.App. 1979), cert. denied, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); National Association of Government Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 396 N.E.2d 996 (1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980); In re McDonough, 296 N.W.2d 648 (Minn. 1980); Brophy v. Philadelphia Newspapers, Inc., 281 Pa. Super. Ct. 588, 422 A.2d 625 (1980). The standard (convincing clarity, not preponderance) against which the evidence is examined is dictated by New York Times v. Sullivan, supra; but the manner of examining the evidence (viewing it most favorably for the non-moving party) in light of the standard is the same as in all summary judgment cases. See Guam Federation of Teachers, Local 1581 v. Ysrael, supra. Compare Wasserman v. Time, Inc., 424 F.2d 920, 922-23 (D.C. Cir.) (Wright, J., concurring), cert. denied, 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970). See generally Comment, The Propriety of Granting Summary Judgment for Defendants in Defamation Suits Involving Actual Malice, 26 Vill.L.Rev. 470 (1981).
[4] A plaintiff claiming defamation now has access into the editorial process to procure evidence bearing on the element of actual malice. Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Such a plaintiff may even discover the identity of confidential sources. Miller v. Transamerican Press, Inc., 621 F.2d 721 (5th Cir.1980).
[5] We note also that the theory of the plaintiff's action against Dr. Dunning was that Dunning told Mrs. King exactly what was printed and that Dunning had lied. When the plaintiff lost that action, she shifted gears and said that Dunning never said these things, and the newspaper fabricated the statement. Dunning's testimony is even more suspect considering that it was given when Dunning was a defendant facing a defamation action.