561 So.2d 402 (1990)
James D. CRONLEY, Appellant,
v.
PENSACOLA NEWS-JOURNAL, INC., a Florida Corporation, Appellee.
No. 89-2139.
District Court of Appeal of Florida, First District.
May 9, 1990.
Rehearing Denied June 6, 1990.
*403 J. Nixon Daniel, III of Beggs & Lane, Pensacola, for appellant.
William H. Clark of Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, for appellee Pensacola News-Journal, Inc.
ALLEN, Judge.
In this libel action, James D. Cronley appeals the trial court's July 11, 1989 order granting summary final judgment in favor of Pensacola News-Journal, Inc. We affirm.
This case arose from a heated political campaign between Cronley and incumbent W.D. Childers for a seat in the Florida Senate. The Pensacola News-Journal (News-Journal), a publicly circulated newspaper owned and operated by Pensacola News-Journal, Inc., published certain political advertisements about Cronley days before the primary election. On August 28, 1988, two such advertisements were published. One indicated that Lost Bay Trading Company, a corporation in which Cronley owned an interest, attempted to purchase 200 acres of Ellyson Industrial Park for "a fraction of its actual value." The advertisement stated that the property had been set aside to attract jobs and industry and that "W.D. said, No! No! No!" The other advertisement stated, "FSLIC takes control of Port Royal condos," "Taxpayers get the Port Royal Shaft" and "Cronley, as president of Port Royal, actually gave the Federal Savings and Loan Insurance Corporation (a government agency) his debt on 25 condos. As taxpayers, this involved millions of our dollars."
On September 5, 1988, the day before the primary, the News-Journal printed two statements relating to an ethics investigation of Childers, prompted by Cronley. An advertisement appeared with the headline, "Cronley's charges against W.D. proven False", and a news article headline stated, "Childers cleared in ethics probe."
Cronley lost the primary election and on October 2, 1988, filed a complaint alleging the News-Journal had maliciously published false and defamatory information. The News-Journal responded that the statements were true, privileged and published in good faith, and also filed a third party complaint in indemnity against Childers, alleging that Childers had placed the advertisements and represented to the News-Journal that the statements were true. Thereafter, the News-Journal filed a motion for summary judgment, with supporting affidavits from the executive editor and the director of advertising for the News-Journal. The unrefuted factual assertions contained in the affidavits were summarized by the trial court as follows:
11. Ms. Saul states she is and in September, 1988 was Executive Editor of the News-Journal. She further states that the News-Journal on September 5 published an article reporting the results of an investigation of Senator Childers of charges brought by his opponent in the Democratic primary, Jim Cronley. The *404 article reported that Florida Assistant Attorney General Craig Willis had reviewed the findings of an Ethics Commission investigation, determined that there was no probable cause as to each allegation, and recommended that the Ethics Commission clear Senator Childers of all charges. The second sentence of the article stated that the Ethics Commission would meet at a later hearing to consider the recommendations. The headline of the article was: "Childers Cleared in Ethics Probe." The next day a clarification was published with regard to the September 5 headline which explained that the Florida Attorney General's office has recommended that the Ethics Commission drop the charges, but that the Ethics Commission must hold a hearing on the matter. Ms. Saul stated the purpose of the clarification was to make clear that the recommendation, though itself clearing Senator Childers of wrongdoing, was not the same as the Ethics Commission determination. It is further stated that on December 1, 1988, when the Ethics Commission considered the Attorney General office's recommendation, it voted unanimously to clear Senator Childers of all charges... .
12. The affidavit of Mr. Gutierrez identifies him as the Director of Advertising for the News-Journal since July 31, 1986, with duties which include supervision of advertising sales. He states he is generally responsible for acceptance or rejection of advertising for the newspaper. He related that when Mr. Childers submitted advertisements relating to Lost Bay Trading Company, he asked for documentation to support statements that Mr. Cronley had an interest in Lost Bay Trading Co., Inc., and that the proposed purchase by Lost Bay was for $3,000 per acre. In response, Mr. Childers delivered some seven documents: (a) a 1988 annual report of the Lost Bay Corporation to the Secretary of State showing Mr. Cronley as Vice-President and Treasurer; (b) Articles of Incorporation of Lost Bay showing Mr. Cronley as incorporator; (c) public disclosure of financial interests of James D. Cronley showing a 50% interest in Lost Bay; (d) proposal of Lost Bay for the stimulation of Ellyson Industrial Park dated February 14, 1984, (e) minutes of meeting of Pensacola-Escambia Development Commission dated February 22, 1984; (f) minutes of P-E Development Commission dated April 25, 1984. With regard to the advertisement pertaining to Port Royal, he requested Childers to furnish documentation that FSLIC took control of Port Royal condos and he furnished a certified copy of a conveyance and Partial Assignment of Lease recorded in the public records. Also, in connection with the ad that Cronley's charges against Childers "proven false," the affiant asked for documentation that the charges were proven false. He submitted a report of Advocate's recommendation to the Ethics Commission filed with the Ethics Commission on August 29, 1988. He questioned the use of the word "false" in reference to charges that were said to be "unfounded." He states that Mr. Childers submitted Webster's Dictionary showing "false" and "unfounded" as synonyms. It is further stated that all statements in the advertisements were represented by Mr. Childers as true [.]
In July of 1989, the trial court entered summary final judgment in favor of the News-Journal.
Under the landmark holding in New York Times Co. v. Sullivan, 376 U.S. 254, 279-280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964), Cronley, as a public figure plaintiff, was required under the First Amendment to show that the alleged defamatory statements were published with actual malice, defined as "knowledge that it was false or with reckless disregard of whether it was false or not." Such showing had to be with "convincing clarity." Id. at 285-286, 84 S.Ct. at 728-729. Monitor Patriot Co. v. Roy, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).
*405 In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court applied the New York Times analysis to review a summary judgment in a libel action. In that case, Liberty Lobby filed suit against a magazine which allegedly published articles portraying its founder as a racist and neo-Nazi. Summary judgment was entered due to the writer's investigation, research, and reliance on numerous sources of information which precluded a finding of actual malice. According to the Court, the following analysis should be implemented in a libel action on motion for summary judgment:
When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under New York Times. For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.
Id. 376 U.S. at 254, 84 S.Ct. at 710.
Florida courts have also addressed this issue. In a factually similar case, a political candidate brought a libel suit against a newspaper alleging that two advertisements, published in the midst of a political campaign, defamed him by charging that he was un-American and displayed pro-Castro allegiance. Menendez v. Key West Newspaper Corp., 293 So.2d 751 (Fla. 3d DCA 1974). The court entered summary judgment in favor of the newspaper after reviewing affidavits, pleadings and depositions. Menendez appealed, arguing that a jury should determine whether actual malice, existed. The Third District Court of Appeal affirmed, citing New York Times for the proposition that unless a plaintiff can show by clear and convincing evidence that a publisher had serious doubt as to the truthfulness of the publication, and that such publication was made with actual malice, he cannot prevail. The Menendez court further stated that in cases which involve the First Amendment, and where recklessness in publication of allegedly libelous information is at issue, summary judgments should be granted more liberally. Id. at 752.
Similarly, this court upheld a summary judgment where the record failed to show that allegedly false statements were published with deliberate awareness of their falsity. Newton v. Florida Freedom Newspapers, Inc., 447 So.2d 906 (Fla. 1st DCA 1984). We also recognized the principle enunciated in Menendez that summary judgments are to be liberally granted where the constitutional requirement of actual malice applies. Newton, 447 So.2d at 907.
Finally, we recognize that a libel action growing out of a political campaign must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks" upon candidates for public office. New York Times Co. v. Sullivan, 376 U.S. at 270, 84 S.Ct. at 720.
Applying the preceding authorities to the case at hand, summary judgment was properly granted, because the undisputed material facts failed to reveal a basis for a jury to render a verdict in appellant's favor. Review of appellant's arguments regarding the subject publications reveals that he would have been able to show nothing more than that his campaign against Childers was heated on both sides. The undisputed facts provided no basis for a finding of falsity or that a jury could conclude that the News-Journal published with actual malice. We share the trial court's view that the unrefuted factual statements in the affidavits demonstrated that the publications were substantially accurate and were not published under circumstances which would cause a rational finder of fact to find actual malice by clear and convincing evidence. The trial court's detailed summary final judgment clearly set forth the proper legal standards to be applied when addressing a motion for summary *406 judgment in a libel action. The court reviewed and discussed the affidavits filed in support of the motion for summary judgment, particularly that of the advertising director, which demonstrated the efforts made by him to substantiate Childers's statements and provide accurate, documented publications. The efforts of the executive editor and director of advertising for the News-Journal demonstrated a good faith attempt to publish the truth, not actual malice. Therefore, we hold that under the controlling law the trial court's entry of summary final judgment in favor of the News-Journal was proper.
We find all other arguments propounded by Cronley in support of his appeal to be without merit.
The summary final judgment is affirmed.
WIGGINGTON and MINER, JJ., concur.