799 So.2d 291 (2001)
C.C. "Doc" DOCKERY, Appellant/Cross-Appellee,
v.
FLORIDA DEMOCRATIC PARTY, Appellee/Cross-Appellant.
No. 2D00-1435.
District Court of Appeal of Florida, Second District.
October 3, 2001.
*293 Robin Gibson and Kevin A. Ashley of Gibson & Valenti, Lake Wales, for Appellant/Cross-Appellee.
Joseph E. Foster and Virginia B. Townes of Akerman, Senterfitt & Eidson, P.A., Orlando, for Appellee/Cross-Appellant.
PER CURIAM.
C.C. "Doc" Dockery appeals a final summary judgment in his defamation action against the Florida Democratic Party. On cross-appeal, the Florida Democratic Party challenges the trial court's rulings on discovery matters. We have carefully reviewed the record and the applicable law. Given our standard of review, we determine that the trial court properly granted summary judgment, and accordingly we affirm. Our decision renders the crossappeal moot. We adopt the trial court's order in its entirety as set forth below.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This matter came before the Court on February 16, 2000, on Defendant, Florida Democratic Party's Motion for Summary Judgment, pursuant to Florida Rule of Civil Procedure 1.510(b). This Court has considered the Motion for Summary Judgment filed by Defendant, Florida Democratic Party ("FDP"), and has considered the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and has heard argument of counsel at a one-hour hearing on February 16, 2000, and has considered all memoranda and briefs filed by each party.
At the outset, this Court is required to make its ruling based upon principles of Constitutional Law, and not based upon its sense of political correctness, etiquette, or even fairness. As has been stated, "The First Amendment requires neither politeness or fairness." Pullum v. Johnson, 647 So.2d 254, 258 (Fla. 1st DCA 1994). Free discussion on sensitive and divisive political issues [is] the cornerstone of our democracy. The ability of the public to weigh all of the information on the issues and candidates, as well as the method that information is disseminated, is guaranteed by the Constitution. Those guarantees, however, are not absolute. The jurisprudence that the courts have established to balance the freedom of exchange of ideas and the protection of character and reputation of individuals is the very essence of the case before this Court.

Standard of Review
This Court has already determined that Plaintiff, C.C. "Doc" Dockery ("Dockery") *294 is a public figure. See Order, dated July 27, 1999. Consequently, Dockery is not only required to prove Florida's common law elements of defamation, but he is also required to prove actual malice by FDP.
Webster's Dictionary defines malice as: "the desire to see another suffer that may be fixed and unreasonable or no more than a passing mischievous impulse. ... The desire to see another experience pain, injury, or distress.... Malice implies a deep-seated often unexplainable desire to see another suffer. Synonyms include: ill will, spite, and mean...." Webster's Ninth New College Dictionary, Merriam Webster Inc. (1984). In today's arena of caustic political campaigns and name calling, "malice," in the plain English sense of the word, seems to be more of the rule than the exception. In Ollman v. Evans, the D.C. Circuit Court of Appeals stated, "[w]e expect people who engage in controversy to accept that kind of statement as their lot. We think that the first amendment demands a hide that tough." Oilman v. Evans, 750 F.2d 970, 1005 (D.C.Cir.1984) (Bork, J., concurring), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
Unlike plain English, actual malice, in the constitutional sense, requires the plaintiff to meet the legal requirements of the "actual malice" test first announced by the United States Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Under that test, Dockery must not only prove that the allegedly defamatory statements made by the FDP are false, and that they were published to a third party, but he must also prove actual malice. Actual malice is proven by evidence of either that (a) the FDP published these statements knowing them to be false at the time they were made or (b) the FDP recklessly disregarded the truth or falsity of these statements at the time they were made. Levan v. Capital Cities/ABC, Inc., 190 F.3d 1230 (11th Cir.1999), cert. denied, 528 U.S. 1198, 120 S.Ct. 1262, 146 L.Ed.2d 118 (2000). Moreover, Dockery must prove actual malice with clear and convincing evidence. Lampkin-Asam v. Miami Daily News, Inc., 408 So.2d 666, 668-69 (Fla. 3d DCA 1981).
Under Florida's law regarding summary judgments, when a motion for summary judgment is brought by a defendant against a public-figure plaintiff, such as Dockery, in a defamation action in which the actual malice test applies, summary judgments are to be more liberally granted. Cronley v. Pensacola News-Journal, Inc., 561 So.2d 402, 405 (Fla. 1st DCA 1990); Newton v. Florida Freedom Newspapers, Inc., 447 So.2d 906 (Fla. 1st DCA 1984); Menendez v. Key West Newspaper Corp., 293 So.2d 751, 752 (Fla. 3d DCA 1974); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A public-figure plaintiff such as Dockery must present record evidence sufficient to satisfy the court that a genuine issue of material fact exists which would allow a jury to find by clear and convincing evidence the existence of actual malice on the part of the defendant. Lampkin-Asam v. Miami Daily News, Inc., 408 So.2d 666, 668-69 (Fla. 3d DCA 1981); Friedgood v. Peters Publishing Co., 521 So.2d 236, 243 (Fla. 4th DCA 1988).

Facts
The facts giving rise to this case ultimately stretch back to 1992 and 1993 when Dockery made gifts to his two children of stock in a company he owned. To determine the correct amount of federal taxes owed on the gifts, Dockery engaged the services of tax accountants at KPMG Peat Marwick, one of the country's largest and *295 best-known accounting firms. Peat Marwick analyzed the books and valued the property of Dockery's company. Based on these values, the firm established a value for the company stock. With this information, Peat Marwick calculated the federal tax owed on the gifts. Peat Marwick notified Dockery of the amount. Dockery paid gift tax to the United States government according to these calculations. See paragraphs 5-7, Plaintiff's Second Amended Complaint.
However, by August 2, 1996, the United States Internal Revenue Service had concluded that Dockery owed an additional $515,262.00 in gift taxes. When the IRS informed Dockery of its position, Dockery formally contested the IRS's determination and petitioned the United States Tax Court. Dockery v. Commissioner of Internal Revenue, 1998 WL 120369 (U.S.Tax Ct. March 19, 1998). On August 2, 1996, The Lakeland Ledger published a newspaper article stating, in its headline, that "IRS says `Doc' Dockery owes $515,262.00 in taxes." See Plaintiffs Second Amended Complaint, Exhibit "B."
In late October or early November, 1996, during an election, in which Dockery's wife, Paula Dockery, was a candidate for a seat in the Florida House of Representatives, District 64, the Florida Democratic Party distributed two political circulars. Each circular states that Dockery had failed to pay $515,262.00 in taxes, or, stated alternatively, that he owed $515,262.00 in taxes. The circulars went on to opine as to what the federal government might have done with that additional money had it been paid. The circulars also state that Dockery is under investigation by the federal government. See Plaintiffs Second Amended Complaint, Exhibits C & D.
On March 19, 1998, the United States Tax Court granted, in part, Dockery's petition, rejected the IRS's position, and held that Dockery owed no additional gift taxes. Dockery v. Commissioner of Internal Revenue, 1998 WL 120369 (U.S.Tax Ct. March 19, 1998).

Conclusions of Law
In this case, Dockery has alleged four counts against FDP based upon two defamatory statements. Each statement was published in late October 1996 or early November 1996. In reviewing these political statements, it is necessary to read the entire publication in context, not simply the offending words. Pullum v. Johnson, 647 So.2d 254, 258 (Fla. 1st DCA 1994). The publications that are in question are "not to be dissected and judged word for word or phrase by phrase, the entire publication must be examined." Desert Sun Publishing Co. v. Superior Court for Riverside County, 97 Cal.App.3d 49, 52, 158 Cal.Rptr. 519, 521 (1979).
The first statement is that Dockery failed to pay $515,262.00 in taxes, or stated alternatively, that Dockery owes $515,262.00 in taxes. The second statement is that Dockery was under investigation by the federal government. Again, these statements must be read and analyzed in context of the entire publications. Colodny v. Iverson, Yoakum, Papiano & Hatch, 936 F.Supp. 917 (M.D.Fla.1996).
It is undisputed that at the time these statements were made, the United States Government, through the Internal Revenue Service, had informed Dockery of its determination that Dockery was deficient in the amount of $515,262.00 in payment of gift taxes on a gift he had made to his children in 1992 and 1993. It is also undisputed that an August 2, 1996, newspaper article in The Lakeland Ledger (attached to Plaintiffs Second Amended Complaint as Exhibit B), which Dockery contends is an accurate representation of the facts at the time, states in its headline that, "IRS *296 says `Doc' Dockery owes $515,262.00 in taxes."
Plaintiff argues that the statement that Dockery owes $515,262.00 in taxes, or alternatively, that he failed to pay $515,262.00 in taxes, is false because, in 1998, the United States Tax Court ruled that Dockery did not owe any additional taxes. In an effort to prove that the FDP knew that Dockery did not owe $515,262.00 in taxes in the fall of 1996, prior to the Tax Court ruling, Plaintiff argues that FDP knew of the August 2, 1996, Ledger article, which states that Dockery had formally contested the Internal Revenue Service's determination.
As evidence that Dockery was not under investigation, Plaintiff has presented the Court with an affidavit of Bill Rufty, the author of the above-mentioned newspaper article in The Lakeland Ledger. Attached to Mr. Rufty's affidavit is a subsequent newspaper article, purportedly written on October 4, 1996. However, the context of the newspaper article, and specifically its reference to Halloween having been the preceding week, suggests that the newspaper article was not published until November of 1996. In any event, the affidavit of Mr. Rufty and his opinion that Mr. Dockery was not under investigation by the federal government is inadmissible hearsay. Alternatively, Plaintiff has failed to establish any foundation for Mr. Rufty's knowledge as to whether Mr. Dockery was or was not under investigation by the federal government at the time. However, this Court can enter summary judgment in favor of the Defendant, even if it could be assumed that Plaintiff had established, through competent record evidence (which it has not), that Dockery was not under investigation by the federal government in late October or early November, 1996.
This Court finds that Plaintiff has not presented any record evidence which would clearly and convincingly demonstrate to a jury that the FDP knew, at the time of the published circulars, that Dockery did not owe $515,262.00 in taxes. The only record evidence that Plaintiff has presented is a comparison of the allegedly defamatory political circulars to a newspaper article published by The Lakeland Ledger. However, that newspaper article indicates in its headline that the IRS says that Dockery owes $515,262.00 in taxes. Moreover, it is undisputed that the IRS had taken the position at the time the statements were published that Dockery owed $515,262.00 in taxes. The record evidence demonstrates and removes any genuine issue of material fact that the FDP relied upon the IRS's position that Dockery owed $515,262.00 in taxes. The fact that the United States Tax Court subsequently disagreed with the IRS does not mean that FDP knew, at the time these statements were published, that the IRS's position was incorrect.
At best, Plaintiff's evidence establishes only the issue of whether FDP deliberately chose not to publish the fact that Dockery had disputed the Internal Revenue Service's determination. This, though, does not create a genuine issue of material fact. As a matter of law, FDP's failure to print Dockery's denials that he owed the taxes does not constitute actual malice. Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); McFarlane v. Sheridan Square Press, Inc., 91 F.3d 1501, 1511 (D.C.Cir.1996). Moreover, FDP's reliance upon the IRS's position that Dockery owed taxes is reliance upon a reliable source. See McFarlane, 91 F.3d at 1513. Reliance upon a reliable source insulates a defendant from a finding of actual malice as a matter of law. See Holter v. WLCY T.V., Inc., 366 So.2d 445, 452-53 (Fla. 2d DCA 1978); *297 Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).
As to the allegedly defamatory statement that Dockery was "under investigation" by the federal government, Plaintiff has failed to present any record evidence that would clearly and convincingly demonstrate that FDP knew, at the time that it published these statements, that Dockery was not under investigation by the federal government.
In conclusion, this Court finds that, having viewed the evidence in the light most favorable to the plaintiff, to determine whether there exists a genuine issue of material fact upon which a reasonable jury could find with convincing clarity that the defendant, FDP, acted with such actual malice, and finding that there exists absolutely no clear and convincing evidence that FDP knew that the information published was false at the time it was published, or recklessly disregarded the truth or falsity of those statements at the time they were published. Lampkin-Asam, 408 So.2d at 668-669. It is therefore
ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is hereby GRANTED.
BLUE, C.J., and STRINGER, J., Concur.
NORTHCUTT, J., Concurs with opinion.
NORTHCUTT, Judge, concurring.
I join my colleagues in approving the decision of the circuit court. But I do so reluctantly, and only because Mr. Dockery forewent contesting that he was a public figure when the Florida Democratic Party assailed him in 1996. His status as such meant that on the FDP's motion for summary judgment he had to submit clear and convincing evidence that the FDP attacked him knowing that its statements were false or that it did so with reckless disregard for whether they were false.
There is little question in my mind that a preponderance of the evidence proved as much. The newspaper articles cited by the FDP as the source of its information reported that Mr. Dockery had engaged reputable certified public accountants to place a value on his insurance company and then to calculate the tax he owed on the gifts of stock he made to his children. As the articles also made clear, Mr. Dockery's dispute with the Internal Revenue Service centered on the valuation of the companyspecifically, the IRS believed the accountants had assigned too much to the reserve the company needed to maintain for the payment of claims.
The FDP's circulars asserted something more sinister. One of the attacks began with the following preface in large type: "Let's face it. Taxes just aren't fun. But each year, we take the time to figure them out and pay what we owe. We don't always like it, but it's the law. Most of us see it that waybut not the Dockerys." Thus, in its entire context, the FDP circular charged that Mr. Dockery "didn't pay the taxes" and was "under investigation by the federal government" because he intentionally disregarded his legal obligation to pay.
I doubt that it requires much sophistication to appreciate that there is an enormous difference between legitimately minimizing taxes and unlawfully evading them. Even so, Mr. Dockery must lose his lawsuit because, try as he might, he could not produce clear and convincing evidence that the FDP knew what it was doing.