DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

MICHAEL T. FLYNN,

Appellant,

v.

RICK WILSON; JIM STEWARTSON; and
MEIDASTOUCH LLC,

Appellees.

No. 2D2024-0278
_____

December 11, 2024

Appeal from the Circuit Court for Sarasota County; Hunter W. Carroll, Judge.

Stephen B. French and Jared J. Roberts of Binnall Law Group, PLLC, Alexandria, Virginia, for Appellant.

Leonard M. Collins of GrayRobinson, P.A., Tallahassee, for Appellee Rick Wilson.

No appearance for Appellees Jim Stewartson and Meidastouch LLC.

ROTHSTEIN-YOUAKIM, Judge.

Retired lieutenant general Michael Flynn sued Rick Wilson for defamation after Wilson referred to Flynn in a tweet as "Putin employee Mike Flynn" and retweeted "FYI, Mike Flynn is Q." Flynn seeks $50 million in damages and a permanent injunction ordering Wilson to stop defaming him. Wilson moved for summary judgment, contending that both of his tweets were opinion or rhetorical hyperbole protected by the First Amendment that "by their nature cannot be proven true or false"

and that Flynn could not show that Wilson made the statements with "actual malice." The trial court granted Wilson's motion and entered judgment in his favor. We affirm.[1]

Flynn is a quintessential public figure. As a lieutenant general in the United States Army, he played a key leadership role in the Afghanistan and Iraq wars. He is a former head of the Defense Intelligence Agency and a former National Security Adviser to President Donald Trump. Flynn has continued to maintain a high public profile, including in the aftermath of the 2020 presidential election and in the public debate surrounding Russia's 2022 invasion of Ukraine.

Wilson is a political strategist, author, and cofounding member of the Lincoln Project, which Flynn alleges is an "organization dedicated to opposing Republicans." Wilson has written two New York Times bestsellers highly critical of President Trump and many of those who served in his administration, including Flynn. In one of those books, titled *Everything Trump Touches Dies: A Republican Strategist Gets Real About the Worst President Ever*, Wilson wrote about Flynn:

> Capo of *l'affaire russe* MAGA Crew Mike Flynn, a disgraced former army general was so outrageously in bed with the Russians that even Trump was forced to fire him.

Wilson frequently expresses his opinions on MSNBC and CNN, among other networks, and on social media, including on the networking service formerly known as Twitter through his handle @TheRickWilson.

### "**Putin employee Mike Flynn**"

Wilson's two tweets in this case did not emerge from a vacuum.

---

[1] The background facts in this opinion come either from the allegations in Flynn's operative complaint or from Wilson's statement of undisputed facts. As the trial court noted, Flynn did not file an affidavit or introduce any record evidence in response to Wilson's summary judgment motion.

Wilson's "Putin employee" tweet was an immediate and direct response to a letter Flynn published to the world on February 24, 2022—the day Russia invaded Ukraine:



**Rick Wilson** ✔
@TheRickWilson

···

Putin employee Mike Flynn

> 🔵 **Ron Filipkowski** @RonFilipkowski · Feb 24, 2022
> Retired Lt. Gen. Michael Flynn just issued a statement blaming Biden because he "ignored and laughed at Putin's legitimate security concerns, and legitimate ethnic problems in the Ukraine," ... while we continuing "to demonize Russia."

★★★
GENERAL
🅕 **FLYNN**

2605 72nd Avenue · E Unit 904 · Ellenton, Florida 34222                    generalflynn

Anyone who questions these rotten foreign and domestic policies are called racist and demonized. We see the unleashing of the federal government on citizens who are simply exercising their constitutional rights and the media covers all this incompetence with a fake smile due to their own deep levels of corruption.

Our president rarely entertains questions or takes responsibility for his tone deafness and failures. The WH ignored and laughed at Putin's legitimate security concerns, and legitimate ethnic problems in the Ukraine.

We have yet to hear from the President of the United States an explanation of U.S. national security interests, instead we continue to demonize Russia, similar to the fake Russia collusion hysteria we all now know was perpetrated against the Trump Administration by elements of the Clinton campaign and the Obama administration.

President Putin calculated this strategic, historic, and geographic play and made the decision to move, and he did. All that stated above, there will never be justification for this invasion or any other form of invasion. However, never forget that war results when diplomacy fails.

May God watch over and protect those in harm's way and may God continue to bless and protect the United States of America.

Sincerely,

*Michael T. Flynn*

Michael T. Flynn
LTG, US Army (Retired)

7:06 PM · Feb 24, 2022

**491** Retweets   **50** Quotes   **3,117** Likes   **15** Bookmarks

3

Flynn's letter was hardly the first time that Flynn and Russia were connected in a news story. Flynn gained national notoriety in early 2017 when he was terminated from his post as Trump's National Security Adviser after serving only twenty-two days. He admitted to having misled Vice President Michael Pence on whether he had discussed with the Russian ambassador—before Trump took office—the Obama Administration's recently imposed sanctions against Russia. President Trump tweeted, "I had to fire General Flynn because he lied to the Vice President and the FBI."[2] Shortly after his dismissal, several newspapers then began reporting that Flynn had received $45,000 from RT, formerly known as Russia Today, for a speaking engagement in Moscow in 2015. Photos from that trip show Flynn sitting at Putin's elbow at an RT dinner. RT ultimately registered as a "foreign agent" with the United States government. No one here disputes that RT is financed by the Kremlin.

### "FYI, Mike Flynn is Q"

Prior to Wilson's retweet of "FYI, Mike Flynn is Q," Wilson had read two articles in which the authors expressed suspicion *on the part of believers in the QAnon conspiracy*[3] that Flynn could indeed be the mysterious "Q." The article in the New York Times stated:

---

[2] It is undisputed that Flynn was ultimately indicted for, among other things, lying to the Federal Bureau of Investigation. He pled guilty and expressly admitted his offense. Flynn later sought to rescind that guilty plea and admission and was eventually pardoned by President Trump.

[3] One article that Wilson attached to his affidavit describes QAnon as a "movement centered on the claim that Mr. Trump, secretly aided by the military, was elected to smash a cabal of Democrats, international financiers and deep-state bureaucrats who worship Satan and abuse children."

To many of the movement's followers, Mr. Flynn ranks just below Mr. Trump. Some have speculated that he is the mysterious figure known as "Q," the purported government insider with a high-level security clearance who began posting cryptic messages in 2017 about the deep state trying to destroy the president.

Our record here suggests that Flynn has a complicated relationship with the QAnon movement. On the one hand, Flynn insisted before the trial court—and now before this court—that QAnon is a terrorist organization and that his reputation has been damaged by those like Wilson who link him with that movement (although he introduced nothing into the record on either point). And on the other hand, Flynn admits that he posted a video showing him and his family members using a slogan that many associate with the QAnon movement ("Where we go one, we go all!"), complete with a hashtag likewise associated with QAnon.[4] Nor does Flynn dispute that he has authorized the sale of Flynn-themed t-shirts, hats, and other merchandise affixed with highly specific slogans commonly associated with QAnon, such as WWG1WGA.

Here is Wilson's retweet of "FYI, Mike Flynn is Q," in context:

---

[4] Flynn does not dispute here that "Where we go one, we go all," is a slogan associated with QAnon. *See also Flynn v. Cable News Network, Inc.,* No. 21-CV-2587, 2024 WL 1765566, at *11 (S.D.N.Y. Apr. 24, 2024) (linking "where we go one, we go all" with the QAnon movement), *appeal withdrawn,* No. 24-1448, 2024 WL 3963564 (2d Cir. June 5, 2024).



Thus, that challenged language is part of a longer message that Wilson retweeted.[5]

**Wilson's motion and the trial court's ruling**

Wilson moved to dismiss or alternatively for summary judgment, invoking Florida's "anti-SLAPP statute," section 768.295, Florida Statutes (2023). As noted, he argued that the tweets were protected opinion or rhetorical hyperbole and that if he had nevertheless made a false statement of fact, he lacked the requisite "actual malice." In support of his motion, Wilson submitted an affidavit that attached the news articles that he had read and that were in general circulation at the time of his

---

[5] Wilson is the person in the video screenshot embedded in the underlying tweet. The record does not tell us what Wilson may have said on MSNBC that day, although the tag line in the screenshot suggests that the subject may have been the 2024 GOP primary.

6

statements, which articles Wilson averred informed his tweets. Wilson then relied on the affidavit and the articles principally to support his contention that he did not act with "actual malice" when he published the tweets.

In his response to Wilson's motion, Flynn did not separately address Wilson's detailed factual recitation. Nor did he submit any counteraffidavits or other record materials in opposition. Although Flynn's counsel stated at the summary judgment hearing that discovery could reveal additional material facts, he did not identify what those might be, nor did he submit an affidavit or declaration with the trial court under Florida Rule of Civil Procedure 1.510(d) identifying additional discovery that needed to be conducted before the court could rule on Wilson's summary judgment motion.

The court ultimately disposed of the purportedly defamatory statements as follows:

> Here, Mr. Wilson came forward with evidence demonstrating a factual basis from which he made the "Putin employee" and "Q" comments. Perhaps General Flynn does not receive a w-2 from Vladmir Putin, but he did receive payment from a Russian Federation-controlled entity. The "gist" and "sting" of the comment is not substantially untrue. . . . Perhaps General Flynn is not the mysterious "Q," but numerous news articles tie a close link between he and the QAnon movement. Mr. Wilson's retweet of Mr. Stewartson's original tweet, at least as it relates to the comment, "FYI, Mike Flynn is 'Q'." is unactionable rhetorical hyperbole.
>
> At bottom, Mr. Wilson demonstrated that both the falsity element and the acting on the falsity element[6] cannot be met

---

[6] The "acting on the falsity" element is the same thing as the "actual malice" element. *See Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (explaining that in a defamation action brought by a public figure plaintiff, the "actor [i.e., the defendant] must act with knowledge or reckless disregard as to the falsity [of the statement]"

by General Flynn at trial. Having done so, General Flynn was required to come forward with evidence to dispute those elements.

Flynn argues that the trial court improperly concluded that the "Putin employee" statement was "substantially true"—and therefore inactionable—because Wilson's written motion never contends that the statement is true. Further, Flynn argues that there is nothing in the record establishing that he was a Putin employee and that even the news articles on which Wilson supposedly had relied say no such thing. Flynn insists that a jury should decide whether receiving money for a speaking engagement at an RT event is substantially the same thing as being a Putin employee. And as to the "Q" statement, Flynn insists that there is a *factual* difference between *being* "Q" and simply repeating and marketing products bearing slogans associated with QAnon.

### Discussion

This court reviews de novo a trial court's grant of summary judgment. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). A movant is entitled to summary judgment if no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the First Amendment requires that Flynn's claim be considered "against the background of a profound national commitment" to the freedom of speech and especially of political speech, which is "essential to the security of the Republic." *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269–70 (1964). Flynn does not dispute that he is a general

---

(quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008))).

public figure under *Sullivan* and its progeny.[7]  Thus, he must prove that Wilson published the two tweets with "actual malice."  *See Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001).  Specifically, to prevail on a defamation claim, a public-figure plaintiff must prove (1) publication by the defendant, (2) of a false statement, (3) with knowledge or reckless disregard as to the falsity (i.e., "actual malice"), (4) which causes actual damages, and (5) is defamatory.  *McQueen v. Baskin*, 377 So. 3d 170, 176 (Fla. 2d DCA 2023) (citing *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019)); *see also Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (reciting elements of a claim for defamation).

And it is for this court to decide, as a matter of law, whether Wilson's tweets are actionable expressions of fact or nonactionable expressions of rhetorical hyperbole or pure opinion.  *See Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984) ("Whether a statement is one of fact or one of opinion is a question of law."); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006) ("It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole.").

---

[7] As we explained in *Saro Corp. v. Waterman Broadcast Corp.*, 595 So. 2d 87, 89 (Fla. 2d DCA 1992):

> There are two classes of public figures, "general" and "limited."  General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice.  Limited public figures, on the other hand, are individuals who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

"[W]hen a motion for summary judgment is brought by a defendant against a public-figure plaintiff, such as [Flynn], in a defamation action in which the actual malice test applies, summary judgments are to be more liberally granted." *Dockery*, 799 So. 2d at 294. In this matter with important First Amendment issues at stake, we are tasked with conducting our own independent review of the evidence and reaching our own legal conclusions as necessary. *Seropian v. Forman*, 652 So. 2d 490, 494 (Fla. 4th DCA 1995) (noting that in libel and slander actions subject to *Sullivan*, "the scope of review on appeal is highly unusual and essentially does away with the notion that the appellate court will defer to the factfinder's application of law to facts" (citing *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989))).

## "Putin employee Mike Flynn"

Because Wilson never argued in his motion for summary judgment that the statement "Putin employee Mike Flynn" was true or substantially true, the trial court erred in granting Wilson summary judgment on that basis.[8] *See* Fla. R. Civ. Proc. 1.510 (requiring that a summary judgment motion be in writing and specify its grounds so that the nonmovant can properly respond). Nevertheless, Wilson did argue in his motion that the statement is rhetorical hyperbole or opinion protected by the First Amendment. We agree and conclude that the "Putin employee" statement is nonactionable rhetorical hyperbole or opinion. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999)

---

[8] Wilson did argue *at the summary judgment hearing* that if the "Putin employee" statement is not rhetorical hyperbole or opinion, it is alternatively "substantially true." But rule 1.510, based on the analogous federal rule, requires us to focus on Wilson's written motion, not on his counsel's argument at the hearing. *See Nat'l Fire Ins. v. Bartolazo*, 27 F.3d 518, 520 (11th Cir. 1994) (noting that oral motions for summary judgment are impermissible).

("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.").

The First Amendment protects "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Mag. v. Falwell*, 485 U.S. 46, 50 (1988)); *see also Fortson*, 434 F. Supp. 2d at 1378–79 (noting that protected rhetorical hyperbole may "at first blush appear to be factual" (quoting *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995))).  Courts have extended First Amendment protection to such statements in recognition of "the reality that exaggeration and non-literal commentary have become an integral part of social discourse." *Levinsky's, Inc. v. Wal–Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997).  By protecting speakers of such statements, courts "provide[ ] assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20 (citing *Falwell*, 485 U.S. at 53–55).

In conducting our analysis, we must

construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication.  The court must consider the context in which the statement was published . . . .  All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published.

*Hay*, 450 So. 2d at 295 (citing *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)).

Wilson's tweet, after all, appears *together* with Flynn's letter, which says, among other things:  "The WH [White House] ignored and laughed at Putin's *legitimate security concerns and legitimate ethnic problems* in

11

Ukraine.  We have yet to hear from the President of the United States an explanation of U.S. national security interests, *instead we continue to demonize Russia . . . ."*  (Emphasis added.)

Flynn wants us to isolate Wilson's statement from its context and focus instead on what it typically means to be an "employee."  And stripped from the rest of the tweet, Wilson's statement may indeed appear to be making a factual claim about Flynn's economic relationship with Putin.  But that is not what a reasonable reader of Wilson's Twitter feed would think Wilson was trying to communicate.  Rather, whether Flynn gets a regular paycheck from the Russian Federation—like Putin's secretary perhaps—just isn't Wilson's point.  A reasonable reader of Wilson's response to Flynn's letter would instead understand Wilson to be expressing essentially the same thing he wrote in his book, namely, what else would you expect from someone "in bed with the Russians"?  As with Flynn's actual intimate relationships, his actual economic relationship with Putin (if any) is immaterial.  *See Knievel v. ESPN*, 393 F.3d 1068, 1078 (9th Cir. 2005) ("[T]aken in isolation and given a literal interpretation, ESPN's suggestion that Evel is a pimp is 'sufficiently factual to be susceptible of being proved true or false.'  But we assess the meaning of the word in the context in which it was used.  Because [pimp] cannot reasonably be interpreted literally in this context, the fact that its literal interpretation could be proven true or false is immaterial.").

The opinion in *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021), is an instructive example of similar "rhetorical hyperbole" protected by the First Amendment.  In that case—decided on a motion to dismiss—*Herring Networks*, the operator of One America News (OAN), sued Rachel Maddow for defamation based on certain comments she had made during a TV broadcast.  Among other things, she had stated, "In

12

this case, the most obsequiously pro-Trump right wing news outlet in America [OAN] really literally is paid Russian propaganda." *Id.* at 1153 (emphasis omitted). Except that OAN really literally wasn't. Rather, as Maddow also disclosed to her listeners, one of OAN's employees also freelanced for Sputnik News, a Russian state-financed news organization, and was paid for that freelance work. *Id.* at 1152. And, Herring Networks had further alleged that employee's work was separate and distinct from his work for OAN. *Id.* The court nevertheless dismissed Herring Network's complaint with prejudice, concluding: "[T]he challenged statement was an obvious exaggeration, cushioned within an undisputed news story. The statement could not reasonably be understood to imply an assertion of objective fact, and therefore, does not amount to defamation." *Id.* at 1151.[9]

So too here. Wilson's tweet appears *together* with the text of Flynn's letter. *See Herring Networks*, 8 F.4th at 1159 ("Because Maddow discloses all relevant facts and employs colorful, hyperbolic language, we conclude that the specific context of the statement does not render it an assertion of fact."). A reasonable reader would understand that Wilson was simply reacting imaginatively to Flynn's fully disclosed letter. That reasonable reader encountering Wilson's tweet would also have had at their mental disposal the prior widely publicized news stories about Flynn's purported connections with Russia—stories that indeed would

---

[9] *See also Pullum v. Johnson*, 647 So. 2d 254, 258 (Fla. 1st DCA 1994) ("Examining Reverend Johnson's broadcast . . . the challenged 'drug pusher' statement cannot reasonably be interpreted as stating 'actual facts' about Pullum's illegal association with drugs. Johnson's broadcast addressed a matter of obvious public concern in Santa Rosa County and invoked exaggerated hyperbolic language to emphasize his objection to the proposed ordinance amendments that would make Santa Rosa a 'wet' county.").

have been familiar to essentially anyone who followed the news during the first years of the Trump presidency. *See Hay*, 450 So. 2d at 295 ("Pure opinion is based upon facts that the communicator sets forth in a publication, *or that are otherwise known or available to the reader or the listener as a member of the public.*" (emphasis added)). A reasonable reader of Wilson's tweet simply would not think that Wilson was responding to Flynn's letter about the invasion of Ukraine by purporting to make a literally true, factual claim about Flynn's employment status.

Finally, "[t]he medium through which the contested statement was made [here, Wilson's Twitter feed] supports [Wilson's] argument that a reasonable viewer would not conclude the statement implies an assertion of fact." *See Herring Networks*, 8 F.4th at 1157. Flynn emphasizes how deeply partisan Wilson has become, alleging at one point in his complaint that "[d]ue to several policy disagreements with President Donald Trump's Administration, Wilson seemingly switched his political beliefs overnight, and began working with far-left publications." But Wilson's political orientation simply underscores that reasonable readers of Wilson's Twitter feed will expect Wilson to be hyperbolic and highly subjective. *See id.* ("We agree with the district court's conclusion that the broad context of Maddow's show makes it more likely that her audiences will 'expect her to use subjective language that comports with her political opinions.' " (quoting *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1050 (S.D. Cal. 2020))).

## "FYI, Mike Flynn is Q"

We agree with the trial court that no reasonable jury could find that Wilson defamed Flynn through the retweet of "FYI, Mike Flynn is Q." Flynn introduced no record evidence demonstrating that Wilson retweeted that phrase with actual malice, and Flynn failed in the first

14

instance to demonstrate that the statement was even capable of being proven true or false.

"A public-figure plaintiff . . . must present record evidence sufficient to satisfy the court that a genuine issue of material fact exists which would allow a jury to find by clear and convincing evidence the existence of actual malice on the part of the defendant." *Dockery*, 799 So. 2d at 294 (first citing *Lampkin–Asam v. Mia. Daily News, Inc.*, 408 So. 2d 666, 668–69 (Fla. 3d DCA 1981); and then citing *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 243 (Fla. 4th DCA 1988)). And as the Supreme Court explained in *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968):

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

Here, the onus was on Flynn to prove by clear and convincing evidence that Wilson entertained "serious doubts" about the accuracy of the articles stating that at least some believers in the QAnon conspiracy think that Flynn is Q. But Flynn did not submit an affidavit or other record evidence demonstrating Wilson's "actual malice."

Moreover, although the record persuades us that most QAnon adherents believe that there is at least one Q (and maybe more), we cannot discern much else about that person or persons, whether inadvertently or by design. Nevertheless, this ambiguity does not create a genuine issue of material fact for the jury to resolve. If Flynn is not Q (or one of the Qs), then it presumably would not have been hard for him to have filed an affidavit with the trial court to that effect. After all, in this case governed by *Sullivan* and its progeny, Flynn has the burden of proving falsity. *See Dockery*, 799 So. 2d at 294 (recognizing that under

15

*Sullivan*, a public figure plaintiff must prove falsity); *see also Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776–77 (1986) (noting the inapplicability of the common law presumption that defamatory speech is false even in the context of a defamation suit brought by a *private figure plaintiff* against a media defendant where the issue involved matters of public concern). But if, as the record suggests, the identity of "Q" poses an intractable proof problem—due perhaps to the very nature of QAnon—that is Flynn's problem and not Wilson's. *See Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356–57 (Fla. 3d DCA 2020) (recognizing that a defamation claim must be "capable of being proved true or false on a core of objective evidence"); *see also Hepps*, 475 U.S. at 778 ("[R]equiring the plaintiff to show falsity will insulate from liability some speech that is false, but unprovably so."). Thus, we agree with the trial court that the statement "FYI, Mike Flynn is Q" is nonactionable rhetorical hyperbole or opinion.

Indeed, on this record, "Flynn is Q" becomes just another example of generally nonactionable name calling that lacks a verifiable factual core. *See Cheng v. Neumann*, 51 F.4th 438, 446 (1st Cir. 2022) ("right wing," "far-right," and "conspiracy theorist"); *Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976) ("fascist"); *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284–86 (1974) ("scab"); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 912–13 (2d Cir. 1977) ("toady"). We are thus compelled to affirm the judgment as to the retweet.

## *Gundel* and the anti-SLAPP statute

Flynn also argues that this court should reverse because it misinterpreted the anti-SLAPP statute in *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. 2d DCA 2019), when it determined that a "burden-shifting" scheme applies to motions to dismiss under that statute. But

Wilson did not just move to dismiss; he also moved for summary judgment, and the trial court ultimately disposed of Flynn's claims against him on summary judgment. Thus, affirming the trial court here does not require us to rely on *Gundel*.

Flynn further insists that he was under the impression below that Wilson's motion for summary judgment was a truncated one somehow governed by the anti-SLAPP statute rather than by Florida Rule of Civil Procedure 1.510. But the plain language of section 768.295(4) supports no such impression: that section does not provide an alternative summary judgment procedure to that set forth in rule 1.510; rather, it simply anticipates that in cases implicating First Amendment concerns, summary judgment motions may be filed early in the case. *Id.* ("As soon as practicable, the court shall set a hearing on the motion [to dismiss or for summary judgment], which shall be held at the earliest possible time after the filing of the claimant's . . . response."). Flynn's position is also belied by the record evidence showing his express agreement with Wilson to adjust certain time frames set forth in rule 1.510(b). Regardless, if Flynn had truly been surprised at the summary judgment hearing that Wilson and the trial court were treating Wilson's motion as one governed by rule 1.510, we would have expected Flynn's counsel to have moved for a continuance of the hearing or to have at least asked for the opportunity to supplement the record. But he did neither.

Finally, on this summary judgment record (with Flynn submitting no counteraffidavits), we find no error in the trial court's determinations that Flynn's lawsuit against Wilson lacked merit and that it was brought "primarily" because of Wilson's exercise of his First Amendment rights. *See* § 768.295(3).

## Conclusion

17

We have the privilege of living in a country with a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." *Sullivan*, 376 U.S. at 270. Like it or not, such attacks are a characteristic feature of our democracy—regardless of the political persuasion of the speaker and regardless of the political persuasion of the public figure on the receiving end of that speech. As the trial court noted, Wilson's tweets may not have been polite, and they may not have been fair. But the First Amendment required neither, and so we affirm.

Affirmed.

CASANUEVA and SILBERMAN, JJ., Concur.

_____

Opinion subject to revision prior to official publication.