IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

HOWARD ADAM FOX,

      Appellant,

 v.                                                                          Case No.  5D16-1822

HAMPTONS AT METROWEST
CONDOMINIUM ASSOCIATION, INC.,

      Appellee.

_____/

Opinion filed July 21, 2017

Appeal from the Circuit Court,
for Orange County,
Margaret Schreiber, Judge.

Howard Adam Fox, Orlando, Pro Se.

James S. Byrd, Jr., of James S. Byrd, PA,
Orlando, for Appellee.


PER CURIAM.

      Howard Adam Fox appeals the trial court's order finding him guilty of civil contempt

of court for violating a settlement agreement he entered into with the Hamptons at

Metrowest Condominium Association, Inc. (Association).  Fox argues that portions of the

contempt order constitute a prior restraint on protected speech under both the Florida

Constitution and United States Constitution.  We agree.

Fox resides at the Hamptons at MetroWest (Hamptons), a condominium complex managed by the Association. The Association filed a verified complaint that was later amended, seeking injunctive relief against Fox. The complaint alleged, inter alia, that Fox violated section 718.303, Florida Statutes (2015), by failing to comply with the Hamptons' Declaration and rules and regulations thereby causing irreparable harm to homeowners, renters, and guests of the Hamptons, the Association, and its representatives. The complaint further alleged that Fox engaged in a continuous course of conduct designed and carried out for the purpose of harassing, intimidating, and threatening other residents, the Association, and its representatives. After the trial court granted the preliminary injunction ex parte, the parties reached a settlement agreement in which Fox agreed to cease certain actions. Consequently, the trial court entered a final judgment enforcing the settlement agreement and dismissing with prejudice all claims raised by either party. However, it retained jurisdiction to enforce the settlement agreement.

Soon thereafter, the Association filed a motion for contempt, alleging that Fox had willfully and intentionally violated the terms of the settlement agreement and final judgment. After a hearing, the trial court found Fox in civil contempt. In addition to enforcing the provisions of the settlement agreement, the trial court further ordered Fox to stop posting, circulating, and publishing any pictures or personal information about current or future residents, board members, management, employees or personnel of the management company, vendors of the Hamptons, or any other management company of the Hamptons on any website, blog, or social media. He was further ordered to take down

2

all such information currently on any of his websites or blogs.[1]  The trial court also prohibited Fox from starting any new blogs, websites or social media websites related to the Hamptons or the Association.  It informed Fox that, as his punishment, if someone asked him on his social media page if he enjoyed living at the Hamptons, he could not post a response online.  Instead, he would have to call the person to express his concerns.  Notably, these amendments to the settlement agreement appear to be permanent.  Fox insists that the amendments, imposed as his punishment, violate his right to speak freely.  We agree that a blanket prohibition of his online speech constitutes an unconstitutional prior restraint on free speech.

Both the United States Constitution and the Florida Constitution prohibit laws that curtail the freedom of speech or the freedom of the press.[2]  Amend. I, U.S. Const. ("Congress shall make no law . . . abridging the freedom of speech, or of the press."); Art. I, § 4, Fla. Const. ("Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right."). "A prior restraint on publication, or censorship of information that has already been published, is presumptively unconstitutional under the First Amendment."  Palm Beach Newspapers, LLC v. State, 183 So. 3d 480, 482-83 (Fla. 4th DCA 2016) (citing Neb. Press Ass'n v. Stuart, 427 U.S.

---

[1] Fox utilized the internet to voice his displeasure over the quality of life at the Hamptons.

[2] Although Fox is not working for a newspaper or magazine, "press includes not only newspapers, books, and magazines, but also humble leaflets and circulars. . . . [One does] not have to be a card carrying member of the Associated Press or the New York Times to be entitled to the protection of the First Amendment."  Town of Lantana v. Pelczynski, 290 So. 2d 566, 569 (Fla. 4th DCA 1974), aff'd, 303 So. 2d 326 (Fla. 1974) (citing Lovell v. City of Griffin, 303 U.S. 444 (1938)).

539, 559 (1976)). It has been established that "[p]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." Vrasic v. Leibel, 106 So. 3d 485, 486-87 (Fla. 4th DCA 2013) (quoting Stuart, 427 U.S. at 559). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." Alexander v. United States, 509 U.S. 544, 550 (1993); see also Vrasic, 106 So. 3d at 486-87.

In fact, "[w]here matters of public concern are involved, privacy interests give way to the First Amendment right to publish lawfully obtained, truthful information about such matters." Palm Beach Newspapers, 183 So. 3d at 483 (citing Bartnicki v. Vopper, 532 U.S. 514, 534 (2001) ("[P]rivacy concerns give way when balanced against the interest in publishing matters of public importance."); The Fla. Star v. B.J.F., 491 U.S. 524, 536-37 (1989) (stating that a news report about a criminal prosecution is "a matter of public significance"); Gawker Media, LLC v. Bollea, 129 So. 3d 1196, 1200-02 (Fla. 2d DCA 2014)). The United States Supreme Court has "consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern." United States v. Cassidy, 814 F. Supp. 2d 574, 582 (D. Md. 2011). "This is because 'in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate 'breathing space' to the freedoms protected by the First Amendment.'" Id. (quoting Boos v. Barry, 485 U.S. 312, 322 (1988)). "[O]nline speech is equally protected under the First Amendment as there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech." Id. (quoting Reno v. Am. Civil Liberties Union, 521 U.S. 844, 870 (1997)); see also Obsidian Fin. Grp., LLC v. Cox, 812 F. Supp. 2d 1220,

4

1222 (D. Or. 2011), aff'd, 740 F.3d 1284 (9th Cir. 2014) (finding statements on blog constituted opinion speech protected by First Amendment).

Yet, the right to free speech and the freedom of the press are not without their limits. Indeed, "[t]here is not in existence any right, constitutional or otherwise which does not carry with [it] an equal and balancing amount of responsibility." Firstamerica Dev. Corp. v. Daytona Beach News-Journal Corp., 196 So. 2d 97, 101 (Fla. 1966). Freedom of speech does not extend to obscenity, defamation, fraud, incitement, true threats, and speech integral to criminal conduct. Cassidy, 814 F. Supp. 2d at 582-83. "Speech that does not fall into these exceptions remains protected." Id. at 583 (citing United States v. Stevens, 559 U.S. 460 (2010)).

Importantly, "[n]o prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court." Org. for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971); Procter & Gamble Co. v. Bankers Tr. Co., 78 F.3d 219, 225 (6th Cir. 1996) ("The private litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint."). Instead, "[s]ubsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context." CBS, Inc. v. Davis, 510 U.S. 1315, 1318 (1994). This is because "[a] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." Vrasic, 106 So. 3d at 487 (quoting Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 559 (1975)); See also Matter of Providence Journal Co., 820 F.2d 1342, 1345 (1st Cir. 1986) ("If a publisher is to print a libelous,

5

defamatory, or injurious story, an appropriate remedy, though not always totally effective, lies not in an injunction against that publication but in a damages or criminal action after publication.").

In this case, the trial court erred when it prohibited Fox from making any statements whatsoever pertaining to the Hamptons or to the Association on his websites, blogs, and social media websites without conducting a proper constitutional inquiry.[3]  Accordingly, we reverse the portions of the contempt order prohibiting Fox from posting on any website, blog, or social media, and remand for further proceedings.  However, we conclude that the trial court did not err when it enforced the agreed upon terms of the settlement agreement and affirm the contempt order in that respect.

AFFIRMED in part; REVERSED in part; and REMANDED.


PALMER, TORPY and BERGER, JJ., concur.

---

[3] On remand, the trial court should keep in mind that "[a] content-based restriction on protected speech must survive strict scrutiny." Cassidy, 814 F. Supp. 2d at 583 (citing United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 813 (2000)).  In most cases, where "the provision focuse[s] only on the content of the speech and the direct impact that speech ha[s] on viewers, the provision [is] a content-based restriction." Id. at 584.  "To survive strict scrutiny, the Government has the burden of showing that a content-based restriction 'is necessary to serve a compelling state interest.'" Id. (citing PSINet Inc. v. Chapman, 362 F.3d 227, 234 (4th Cir. 2004)).  Notably, it has been held that "preventing the use of the Internet and other interactive computer services to inflict emotional distress on others serves an important governmental interest." Id. at 585.  However, "Twitter and Blogs are today's equivalent of a bulletin board that one is free to disregard, in contrast, for example to e-mails or phone calls directed to a victim." Id. (citing United States v. Bowker, 372 F.3d 365, 378 (6th Cir. 2004) (contrasting why a federal telephone harassment statute serves a compelling governmental interest and a statute that made it a criminal offense for three or more persons to assemble on a sidewalk and to be "annoying" to a passerby did not serve a compelling governmental interest)).