NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


NORMAN GUNDEL; WILLIAM MANN; and )
BRENDA N. TAYLOR, individually and on )
behalf of all similarly situated persons, )
                                         )
          Petitioners,                   )
                                         )
v.                                       )          Case No. 2D18-899
                                         )
AV HOMES, INC. and AVATAR                )
PROPERTIES, INC.,                        )
                                         )
          Respondents.                   )
_____ )

Opinion filed February 1, 2019.

Petition for Writ of Certiorari to the Circuit
Court for Polk County; Andrea Teves Smith,
Judge.

Kristin A. Norse and Stuart C. Markman of
Kynes, Markman & Felman, P.A., Tampa;
and Kenneth G. Turkel and Shane B. Vogt
of Bajo Cuva Cohen & Turkel, P.A., Tampa,
for Petitioners.

Daniel J. Fleming and Christian M. Leger of
Gray Robinson, P.A., Tampa, for
Respondents.



BLACK, Judge.

Norman Gundel, William Mann, and Brenda N. Taylor (the Residents) seek a writ of certiorari quashing the trial court's order denying their motion to dismiss the counterclaim filed by Avatar Properties, Inc., in the Residents' class action lawsuit against Avatar Properties and its parent company, AV Homes, Inc. The Residents assert that by failing to adhere to the language of sections 720.304 and 768.295, Florida Statutes (2017), and by not dismissing the counterclaim as a Strategic Lawsuit Against Public Participation (SLAPP) suit the court departed from the essential requirements of law. We grant the petition and quash the order denying the Residents' motion to dismiss.

I.      Background

The Residents filed a class action complaint against AV Homes and Avatar Properties alleging violations of Florida's Homeowners' Association Act, §§ 720.301-720.407, and Florida's Deceptive and Unfair Trade Practices Act, §§ 501.201-501.213, Fla. Stat. (2017), and seeking declaratory relief, injunctive relief, and damages. A brief discussion of the claims in the Residents' complaint and Avatar Properties' counterclaim is necessary to provide context to our decision.

Avatar Properties is the developer of Solivita, the community in which the Residents own homes. In their complaint, the Residents claimed that Avatar Properties and AV Homes violated the law when they created both the Solivita Community Association and the Club Plan, each of which require Solivita homeowners to pay fees.[1]

---

[1]Membership in both the Solivita Community Association and the Club Plan are mandatory for Solivita homeowners. The association fee is an assessment. The Club Plan governs the "Club amenities" and establishes the "Club dues" or Club fees, which include both expenses, similar to common-area upkeep expenses, and "Club membership fees." The Club amenities are exclusively owned by the "Club

The Residents claim that the imposition of both of these fees is not legal and that certain marketing for the community was deceptive. In creating Solivita, Avatar Properties also established two community development districts (CDDs) to fund infrastructure within the community through additional assessments on homeowners.

The Residents' lawsuit arose after Avatar Properties proposed to sell the Club amenities, as established by the Club Plan, to the CDDs at a cost of $73.7 million. The purchase would be financed through the issuance of bonds, to be repaid by Solivita homeowners including the Residents. The Residents expressed concerns about the proposed sale and publicly commented on the propriety of the $73.7 million suggested purchase price and bond validation proceedings.[2] They posted on Internet blogs, spoke at Solivita CDD meetings, distributed handouts at CDD meetings, commented at other local meetings at which Solivita homeowners were present, and circulated a petition to have the Club amenities appraised. The Residents obtained an appraisal setting the fair market value of the Club amenities at $19.25 million. The Residents also posted on the Internet information about the Bond Validation Case, the mechanism by which the CDDs would be granted the bonds to purchase the amenities. The posts included links to the court filings and summaries of the allegations.

After a failed motion to dismiss the Residents' lawsuit, Avatar Properties filed its answer and a counterclaim. The counterclaim raised three counts which the

---

Owner," Avatar Properties, and as alleged by the Residents, the Club membership fees are collected "without deduction of expenses or charges in respect of the Club" as profit to Avatar Properties.

[2]The bond litigation (Bond Validation Case) remains pending below but has not been consolidated with the action at issue here.

Residents allege seek to hold the Residents liable for damages based on constitutionally protected conduct: engaging in free speech, defending and prosecuting lawsuits, and engaging in discourse with governmental entities, the CDDs. Count I of the counterclaim alleged that the Residents breached the purchase and sale agreements "by actively and vocally contesting the validity and enforceability of: (1) the mandatory nature of the membership in the Club; (2) the Club Dues and Membership Fees; and (3) [Avatar Properties'] right to sell the Club [amenities] at its sole discretion." Count II alleged that the Residents breached the affirmative covenant running with the land—the requirements of membership in the Club Plan—"by contesting the validity of the Club Plan, [Avatar Properties'] right to collect Club Dues, and [Avatar Properties'] right to sell the Club [amenities]." Count III of the counterclaim sought a declaratory judgment finding "that the Club [amenities] (and the fees associated therewith) are not subject to [chapter 720]." Count IV claimed tortious interference with contractual relations, alleging that the Residents "unjustifiably interfered with [Avatar Properties'] agreement with the CDDs by contesting the enforceability of the Club Plan." Each count realleged the paragraphs outlining the Residents' conduct: (1) engaging in "extra-judicial conduct aimed at frustrating" the sale of the Club amenities to the CDDs, including posting "misleading information" on the Solivita blog, "handing out fliers to residents that included inaccurate information[,] and contesting [Avatar Properties'] right to collect Club [d]ues"; (2) attending meetings of local clubs/classes for homeowners and contesting the sale of the Club amenities to the CDDs for the requested price; (3) asking residents "to sign petitions contesting [Avatar Properties'] right to sell the Club [amenities]"; and (4) "by virtue of this [lawsuit]" continuing to frustrate Avatar Properties'

- 4 -

"contractual interests." Avatar Properties claimed damages of "increased attorneys' fees in the Bond Validation Case, as well as the delay, frustration, and potential loss of the planned sale to the CDDs," and it argued that the Residents "unjustifiably interfered with [Avatar Properties'] agreement with the CDDs." The purchase agreement between Avatar Properties and the CDDs, dated December 1, 2016, was included in the attachments to the counterclaim.

In their answer, the Residents admitted that they posted information on the Solivita blog and that they "distributed handouts at CDD public meetings"; they admitted to attending classes for residents held by a local club and speaking about the proposed sale of the Club amenities to the CDDs; they admitted that they sought and obtained signatures on a petition for a fair market value appraisal of the Club amenities; and they admitted that Avatar Properties "is trying to sue [the Residents] for filing the above styled class action." The Residents also admitted that they "vocally contested the validity of certain aspects of the Club Plan and the proposed sale of the Club [amenities], as asserted in the official court records in the Bond Validation Case." The Residents filed the affidavit of Mr. Gundel, one of the Residents. Mr. Gundel averred that he made comments and distributed handouts about the proposed purchase of the Club amenities at public CDD meetings "in late 2015 or 2016"; that he posted on the Solivita blog about the Bond Validation Case; that he attended a February 10, 2017, CDD meeting and distributed information about the proposed purchase; that he attended a March 15, 2017, CDD meeting and presented the appraisal petition; and that he attended an April 19, 2017, CDD meeting and presented the appraisal report and

- 5 -

another handout. He further averred that after the class action lawsuit was filed, he attended three more meetings of the CDD and spoke about the proposed purchase.

II.     The Anti-SLAPP motion

Simultaneously with their answer, the Residents also filed a "Motion to Dismiss, For Judgment on the Pleadings or For Summary Judgment on Counterclaim and For Award of Attorneys' Fees and Costs Under Florida's Anti-SLAPP Statutes." The motion alleged that Avatar Properties' counterclaim "openly violates Florida's Anti-SLAPP Statutes because it seeks damages from the [Residents] because they assembled, engaged in free speech, and sought redress before their government," citing sections 768.295 and 720.304.[3]

The Anti-SLAPP statute provides, in pertinent part:

A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

§ 768.295(3). The Anti-SLAPP statute defines "[f]ree speech in connection with public issues" as

any written or oral statement that is protected under applicable law and is made before a governmental entity in connection with an issue under consideration or review by a

_____

[3]For purposes of this opinion, we will refer to section 768.295 as Florida's Anti-SLAPP statute. Both chapter 718 and chapter 720 also contain anti-SLAPP provisions, respectively related to condominium unit owners and parcel owners. §§ 718.1224, 720.304(4), Fla. Stat. (2017).

governmental entity, or is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work.

§ 768.295(2)(a).  "Governmental entity" is defined as "the state, including the executive, legislative, and the judicial branches of government and the independent establishments of the state, counties, municipalities, corporations primarily acting as instrumentalities of the state, counties, or municipalities, districts, authorities, boards, commissions, or any agencies thereof."  § 768.295(2)(b).

The Residents' motion quotes the Anti-SLAPP statute and the operative paragraphs from the counterclaim, and it cites Mr. Gundel's affidavit.  The Residents argued that "simply allowing SLAPPs to proceed violates the very constitutional rights Florida's Anti-SLAPP Statutes were implemented to protect" and that the trial court was tasked with determining two issues: (1) whether the counterclaim was brought "primarily" because the SLAPP defendants engaged in a protected activity, and (2) whether the counterclaim is "without merit."  As to the first issue, the Residents argued that the counterclaim was based solely on protected activities relating to either the Bond Validation Lawsuit or the class action.  As to the second issue, the Residents outlined in detail why Avatar Properties' claims were meritless.  The Residents sought an expeditious hearing of the motion and dismissal of the counterclaim or judgment in favor of the Residents.

In response, Avatar Properties argued that the Residents expressly waived any constitutional protections afforded to them when they contractually agreed to the Club Plan.  In essence, Avatar Properties argued that the contract paragraphs which the Residents claim are legally invalid are the paragraphs which form Avatar

Properties' defense. Avatar Properties did not argue that material facts remained in dispute.

Following a hearing, the trial court entered its order denying the Residents relief. The court treated the Residents' motion only as a motion to dismiss, stating that the Residents could not "substitute a motion to dismiss for either a motion for summary judgment or a motion for judgment on the pleadings." As a result, the court did not consider the motion as a motion for summary judgment or motion for judgment on the pleadings. Based only on the allegations of Avatar Properties' counterclaim, the court found that the Residents failed to show that their conduct fell within the protections of the Anti-SLAPP statute and that the Residents failed to establish that their conduct was made "in connection with" an existing judicial proceeding.

III.    Analysis

A.    Certiorari jurisdiction

"Before a court may grant certiorari relief from the denial of a motion to dismiss, the petitioner must establish the following three elements: '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.' " Williams v. Oken, 62 So. 3d 1129, 1132 (Fla. 2011) (quoting Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004)). The latter two elements are jurisdictional. Id.

Certiorari review has been limited "as a matter of policy to avoid piecemeal review of pretrial orders." Id. at 1134. "However, in numerous cases, Florida courts have permitted certiorari review to determine whether [a party] was afforded the proper process through procedural compliance with the statutory requirements." Id.;

see also Globe Newspaper Co. v. King, 658 So. 2d 518, 519 (Fla. 1995) ("[A]ppellate courts do have certiorari jurisdiction to review whether a trial judge has conformed with the procedural requirements of section 768.72[, Florida Statutes (1993)] . . . ."). Moreover, certiorari review is appropriate where an "order implicates a violation of the parties' constitutional rights which cannot be remedied on plenary review." Rodriguez ex rel. Posso-Rodriguez v. Feinstein, 734 So. 2d 1162, 1163 (Fla. 3d DCA 1999); see also SP Healthcare Holdings, LLC v. Surgery Ctr. Holdings, LLC, 110 So. 3d 87, 91 (Fla. 2d DCA 2013) (citing Rodriguez for this standard).

Here, the Residents contend that "the legislature has made it a matter of Florida public policy to recognize and dismiss SLAPP suits expeditiously because the very filing and continuation of" SLAPP suits has the chilling effect on constitutional rights that the Anti-SLAPP statute was enacted to prevent and that, therefore, the jurisdictional prongs of the certiorari standard have been met. We agree.

The legislature enacted the Anti-SLAPP statute in 2000. In creating section 768.295, the legislature specifically found that

> "Strategic Lawsuits Against Public Participation" or "SLAPPs," are typically dismissed as unconstitutional, but often not before the defendants are put to great expense, harassment, and interruption of their duties, and . . . these lawsuits are an abuse of the judicial process and are used to censor, intimidate, or punish citizens, businesses, and organizations for involving themselves in public affairs . . . .

Ch. 2000-174, § 1, Laws of Fla. The legislature further found that "it is essential in our democracy that the constitutional rights of citizens to participate fully in the process of government be uniformly, consistently, and comprehensively protected and encouraged" and that "the threat of financial liability, litigation costs, . . . and other

personal losses from groundless lawsuits seriously affects . . . individual rights," which courts have recognized as harming individuals' fundamental rights.  Id.

The statutory language and its stated purpose, in addition to case law governing similar statutes, supports our conclusion that the jurisdictional prongs of the certiorari standard have been met.  Section 768.295(3) creates a right not to be subject to meritless suits filed "primarily because [the defendant] has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state."  Cf. Globe Newspaper, 658 So. 2d at 519 ("We read section 768.72 to create a substantive legal right not to be subject to a punitive damages claim . . . until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages.").

To the extent that Avatar Properties argues that the Residents have not established that this court may exercise certiorari jurisdiction because "an alleged error arising from a motion to dismiss is remediable on appeal regardless of whether the motion is granted or denied," Avatar Properties misconstrues the certiorari standard.  As this court has stated, "certiorari may be precluded not by the availability of a mechanism for correcting the error itself; rather, the remedy must alleviate *the harm that results from the error*."  Gawker Media, LLC v. Bollea, 170 So. 3d 125, 132 (Fla. 2d DCA 2015).

In the context of the Anti-SLAPP statute, the harm that results from the court's improper denial of a motion to dismiss or in its failure to rule on pending motions for summary judgment and judgment on the pleadings is precisely the harm that the

Anti-SLAPP statute seeks to prevent—unnecessary litigation.  See ch. 2000-174, § 1; cf. Williams, 62 So. 3d at 1133-34 ("The certiorari exception for the chapter 766 presuit requirements is premised on the purpose of the Medical Malpractice Reform Act—to avoid meritless claims and to encourage settlement for meritorious claims." (footnote omitted)); Globe Newspaper, 658 So. 2d at 520 ("[A] plenary appeal cannot restore a defendant's statutory right under section 768.72 to be free of punitive damages allegations in a complaint until there is a reasonable showing by evidence in the record or proffered by the claimant."); Fla. Hosp. Med. Servs., LLC v. Newsholme, 255 So. 3d 348, 350 (Fla. 4th DCA 2018) ("Certiorari jurisdiction lies to review whether a trial court has complied with the procedural requirements of section 768.72(1)." (citing Tilton v. Wrobel, 198 So. 3d 909, 910 (Fla. 4th DCA 2016))).  In that way, the Anti-SLAPP statute bears some similarity to statutes providing for immunity from suit where the statutory protection cannot be adequately restored once it is lost through litigation and trial.  See James v. Leigh, 145 So. 3d 1006, 1008 (Fla. 1st DCA 2014) ("When the trial court denies a motion to dismiss on immunity grounds, certiorari review of the non-final order is proper because absolute immunity protects a party from having to defend a lawsuit at all and waiting until final appeal would render such immunity meaningless if the lower court denied dismissal in error." (citing Fla. State Univ. Bd. of Trs. v. Monk, 68 So. 3d 316, 318 (Fla. 1st DCA 2011))); see also LoBiondo v. Schwartz, 970 A.2d 1007, 1020 (N.J. 2009) (discussing the two categories of anti-SLAPP statutes and citing Florida's as within the category that "include[s] a legislative declaration that a public participant who has exercised his or her free speech right, sometimes in statutorily defined manner, enjoys immunity").  That is, if certiorari review is not available, the

substantive right created by the Anti-SLAPP statute "is illusory and the very policy that animates the decision to" prevent SLAPP suits is frustrated such that the "statutory protection becomes essentially meaningless for the individual defendant."  See Keck v. Eminisor, 104 So. 3d 359, 365-66 (Fla. 2012) (quoting Tucker v. Resha, 648 So. 2d 1187, 1190 (Fla. 1994)).[4]

B.    Departure

1.  Procedural mechanisms for resolution

The Residents contend that the trial court departed from the essential requirements of law by failing to adhere to the procedures set forth in the Anti-SLAPP

---

[4]We have found only two Florida state cases discussing SLAPP suits: Two Islands Development Corp. v. Clarke, 239 So. 3d 115 (Fla. 3d DCA 2018), and Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County, 616 So. 2d 562 (Fla. 5th DCA 1993).  Neither case discusses whether certiorari relief is warranted in the context of SLAPP suits.  Two Islands does, however, affirm the dismissal with prejudice of three counts of a lawsuit against homeowners who protested the development of land and "interfer[ed] in and prevent[ed] a settlement" of an ongoing action involving the vested rights of property owners, holding—without elaboration—that the trial court properly dismissed those counts "upon a determination that those counts were barred by Florida's anti-SLAPP statute, section 720.304, Florida Statutes (2015)."  239 So. 3d at 121, 126 n.10.  Florida Fern Growers, in addressing the argument that a particular lawsuit was a SLAPP suit, stated, "[a] SLAPP suit has been described as 'one filed by developers, unhappy with the public protest over a proposed development, filed against leading critics in order to silence criticism of the proposed development.' "  616 So. 2d at 570 (quoting Westfield Partners, Ltd. v. Hogan, 740 F.Supp. 523, 525 (N.D. Ill. 1990)). We note, too, that "[l]itigants' right to interlocutory appeal of anti-SLAPP motion decisions has been acknowledged in state courts in California, Georgia, Maine, Massachusetts, New Mexico, and Pennsylvania, and federal courts have allowed immediate appeal of holdings under the anti-SLAPP statutes of California, Louisiana, and Georgia."  Carson Hilary Barylak, Note, Reducing Uncertainty in Anti-SLAPP Protection, 71 Ohio St. L.J. 845, 879-80 (2010) (footnotes omitted).  The Maine Supreme Court has stated that it permits "interlocutory appeals from denials of special motions to dismiss brought pursuant to the anti-SLAPP statute because a failure to grant review of these decisions at this stage would impose additional litigation costs on defendants, the very harm the statute seeks to avoid, and would result in a loss of defendants' substantial rights."  Schelling v. Lindell, 942 A.2d 1226, 1229-30 (Me. 2008).

statute. They argue that the statute expressly permits resolution of SLAPP claims through a motion for summary judgment and that the court's failure to consider their motion as both a motion to dismiss and a motion for summary judgment constitutes a departure.

> The Anti-SLAPP statute provides that
>
> [a] person or entity sued by a governmental entity or another person in violation of this section has a right to an expeditious resolution of a claim that the suit is in violation of this section. A person or entity may move the court for an order dismissing the action or granting final judgment in favor of that person or entity. The person or entity may file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the claimant's or governmental entity's lawsuit has been brought in violation of this section. The claimant or governmental entity shall thereafter file a response and any supplemental affidavits. As soon as practicable, the court shall set a hearing on the motion, which shall be held at the earliest possible time after the filing of the claimant's or governmental entity's response.

§ 768.295(4).[5] The Anti-SLAPP statute plainly authorizes the filing of a motion to dismiss or motion for summary judgment. While it does not elaborate on a motion seeking dismissal, the statute expressly provides that once a motion for summary judgment, "together with supplemental affidavits," has been filed, the claimant (Avatar Properties) "shall thereafter file a response and any supplemental affidavits." Id. The statute then establishes the duty of the court to, "[a]s soon as practicable, . . . set a hearing on the motion, which shall be held at the earliest possible time after" the claimant files its response. Id. Therefore, the statute sets forth the procedural

---

[5]The language of sections 720.304(4)(c) and 768.295(4) are identical in terms of the procedure to be used by the parties and the trial court, as applicable to this case.

mechanisms by which a SLAPP defendant may invoke its substantive right—a motion seeking dismissal or summary judgment—as well as the requirement to hear such motions expeditiously.[6]

And although it is true that motions for dismissal and motions for summary judgment serve separate purposes, "are not interchangeable, and one may not be substituted for another," contrary to the trial court's determination not to hear the motion for summary judgment filed by the Residents with their motion to dismiss, motions filed in the alternative are permitted. See U.S. Bank Nat'l Ass'n on Behalf of Holders of the Home Equity Asset Tr. 2002-4 Home Equity Pass-Through Certificates, Series 2002-4 v. Doepker, 223 So. 3d 1083, 1084 (Fla. 2d DCA 2017) (citing Holland v. Anheuser Busch, Inc., 643 So. 2d 621, 622-23 (Fla. 2d DCA 1994)). That one motion cannot substitute for the other does not allow the court to decline to rule on an otherwise facially and substantively sufficient motion.

As relevant here, Florida Rule of Civil Procedure 1.510 governs summary judgment and provides that "[a] party against whom a claim [or] counterclaim . . . is asserted or a declaratory judgment is sought may move for a summary judgment in that party's favor as to all or any part thereof at any time with or without supporting affidavits." Fla. R. Civ. P. 1.510(b). It further provides that "[t]he judgment sought must be rendered immediately if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is

---

[6]We note that while the statute does not state that a SLAPP defendant may file a motion for judgment on the pleadings, as it does a motion for summary judgment, it provides that a defendant "may move the court for an order . . . granting final judgment." § 768.295(4).

- 14 -

entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(c). The content of the document and its attachments must support the relief requested, thereby allowing the court to rule upon the motion based upon its respective purpose and standard. Cf. HSBC Bank USA, Nat'l Ass'n for Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2007-OA5 v. Nelson, 246 So. 3d 486, 489 (Fla. 2d DCA 2018) ("[T]he character of a motion will depend upon its grounds or contents, and not on its title." (quoting Jones v. Denmark, 259 So. 2d 198, 200 n.1 (Fla. 3d DCA 1972))). The Residents' motion for summary judgment was supported by the contemporaneously filed affidavit of Mr. Gundel and sought judgment in favor of the Residents; Avatar Properties did not raise any material facts in dispute in its response to the motion, and it did not file any affidavits in opposition. That the Residents' motion was filed as a motion to dismiss, motion for summary judgment, and motion for judgment on the pleadings does not relieve the trial court of its statutory obligations to consider the motion under each standard where the motion was facially sufficient and in compliance with the rules of civil procedure and to set a hearing "[a]s soon as practicable" and "at the earliest possible time."

Because the statute allows for the filing of either or both a motion to dismiss and a motion for summary judgment, and because the motions may be filed within one document under an alternative heading, the trial court departed from the essential requirements of the law in declining to consider the Residents' motion as a motion for summary judgment. The motion should be heard on the evidence and pleadings on record as of the date of the hearing on the motion to dismiss.

2. Dismissal

The Residents also contend that the trial court departed from the essential requirements of law in denying the motion to dismiss based on its application of an "inapt" dismissal standard, that applied to motions to dismiss for failure to state a cause of action. See, e.g., Blue Supply Corp. v. Novos Electro Mech., Inc., 990 So. 2d 1157, 1159 (Fla. 3d DCA 2008). The Residents argue that the motion to dismiss was not based on Avatar Properties' failure to state a cause of action because the Anti-SLAPP statute focuses not on whether a cause of action has been sufficiently alleged but on whether the activity that is alleged to have given rise to the cause of action is protected activity; they contend that the trial court's failure to consider Mr. Gundel's affidavit and Avatar Properties' failure to file any conflicting evidence constitutes a departure. The Residents' argument suggests that a motion to dismiss based on the Anti-SLAPP statute requires the trial court to do more than accept as true the factual allegations in the four corners of the complaint and draw all reasonable inferences therefrom in favor of the claimant. We agree.

As discussed above, the Anti-SLAPP statute authorizes the filing of a motion seeking dismissal and a motion seeking summary judgment. Whereas the statute sets forth the procedures for considering a motion for summary judgment, the statute is silent as to the burden or procedure for considering a motion to dismiss. The language of the statute does, however, attach the action to the claimant rather than the SLAPP defendant: "[a] person or governmental entity in this state may not file," thus prohibiting the claimant from taking action, rather than "a person or entity may not be sued by a governmental entity or another person." § 768.295(3). The statutory language supports requiring the claimant to meet a burden.

- 16 -

Placing the initial burden on the SLAPP defendant to set forth a prima facie case that the Anti-SLAPP statute applies and then shifting the burden to the claimant to demonstrate that the claims are not "primarily" based on First Amendment rights in connection with a public issue and not "without merit" serves the purpose of the statute and conforms with the procedures employed in considering other statutorily-based motions to dismiss. See, e.g., Volkswagen Aktiengesellschaft v. Jones, 227 So. 3d 150, 155 (Fla. 2d DCA 2017) (discussing the shifting burden for motions to dismiss based on lack of personal jurisdiction); Becker v. Clark, 722 So. 2d 232, 233 (Fla. 2d DCA 1998) (discussing the shifting burden for motions to dismiss based on qualified immunity). In considering motions to dismiss as to its anti-SLAPP statute, the Maine Supreme Court has stated that "the defendant carries the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government" such that the anti-SLAPP statute applies and then "the burden falls on the plaintiff to demonstrate that the defendant's activity" is actionable. Schelling v. Lindell, 942 A.2d 1226, 1229 (Me. 2008) (quoting Title 14 M.R.S. § 556). The trial court here found that the Residents (1) "failed to show that [their] alleged conduct . . . constitute[d] protected statements before government entities" based on the "[in]sufficient context" in Avatar Properties' counterclaim and (2) "failed to show that their alleged conduct was made 'in connection with' or 'in the course of' an existing judicial proceeding" based on the conduct being "limitedly described [and] lack[ing] sufficient context and temporality" in Avatar Properties' counterclaim. The effect of placing the burden exclusively on the SLAPP defendant based only on the

claimant's allegations allows the claimant to avoid dismissal by being intentionally vague, thus thwarting the purpose of the statute.

Here, the vagueness of Avatar Properties' allegations as to the dates of specific conduct and as to the conduct itself prevents the trial court from determining from the face of the counterclaim that the Residents' actions constitute "free speech in connection with public issues" or instruction of representatives of government. Thus, while it may be clear from the face of the counterclaim that Avatar Properties has based some part of its claims on the filing of the class action and on the Residents' opposition to the Bond Validation Case, the trial court could not determine that Avatar Properties' claims were primarily based on protected activities, as the Anti-SLAPP statute requires. The Residents' motion and supporting affidavit attempt to provide the facts necessary to support dismissal. The trial court must expeditiously address the merits of the Residents' motion under the appropriate standard. See § 768.295(4).

IV.    Conclusion

The petition for writ of certiorari is granted. The order denying the Residents' "Motion to Dismiss, For Judgment on the Pleadings or For Summary Judgment on Counterclaim and For Award of Attorneys' Fees and Costs Under Florida's Anti-SLAPP Statutes" is quashed for the reasons stated herein.

Petition granted; order quashed.

MORRIS and LUCAS, JJ., Concur.