DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ERIK MISHIYEV,

Appellant,

v.

ORLANDO DAVIS and
BEASLEY MEDIA GROUP, LLC,

Appellees.

No. 2D2023-1242

_____

January 31, 2025

Appeal from the Circuit Court for Hillsborough County; Caroline Tesche Arkin, Judge.

Keiron Keith Jackman of Jackman Law, P.A., North Port, for Appellant.

Allison S. Lovelady, Rachel E. Fugate, and Minch Minchin of Shullman Fugate PLLC, Tampa, for Appellees.

LaROSE, Judge.

Rival entertainment personalities "duke it out" after the trial court dismissed, with prejudice, Erik Mishiyev's amended complaint.[1] He asserted causes of action for defamation, infliction of emotional distress, assault, interference with business relationships, and negligent supervision. He also challenges the trial court's order staying discovery pending resolution of the motion to dismiss.

_____

[1] We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A).

The trial court dismissed Mr. Mishiyev's defamation cause of action pursuant to Florida's Anti-SLAPP[2] statute, *see* § 768.295, Fla. Stat. (2020), as barred by the statute of limitations, *see* § 95.11(4)(g), Fla. Stat. (2020), and for failure to comply with the statutory presuit notice requirements of section 770.01, Florida Statutes (2020). The trial court dismissed Mr. Mishiyev's ancillary tort causes of action pursuant to Florida's single action rule.

The Anti-SLAPP statute does not stretch as far as the trial court found. Mr. Mishiyev's lawsuit was not based solely on Orlando Davis' and Beasley Media Group, LLC's (collectively, Appellees) protected public speech. Nor was his defamation cause of action entirely barred by the statute of limitations or for failing to meet the presuit notice requirements. The trial court also erred in dismissing the ancillary tort causes of action. These were independent of his defamation allegations.

Accordingly, we reverse.

## I. Background

### A. A Rivalry Emerges

Mr. Mishiyev (DJ Short-E) is an entertainment personality and disc jockey (DJ) in the hip-hop radio and music industry. Orlando Davis, a rival entertainment personality, is program director of WiLD 94.1. Beasley Media Group, LLC (Beasley), owns this radio station.

Originally from New York, Mr. Mishiyev tried to ply his trade in Florida. He gained popularity, eventually becoming a "Resident DJ" at the Rain Lounge in Tampa. Mr. Mishiyev met Mr. Davis in 2002. Over the years, he unsuccessfully attempted to befriend Mr. Davis. Allegedly, Mr. Davis used his influence and position at WiLD 94.1 to destroy Mr. Mishiyev's career.

---

[2] "SLAPP" stands for "Strategic Lawsuits Against Public Participation."

2

Mr. Mishiyev expanded to YouTube in 2008. But, in December 2019, Mr. Davis allegedly contacted YouTube to report false copyright infringement claims, accuse Mr. Mishiyev of illegal drug use, and make other derogatory remarks. YouTube quickly banned Mr. Mishiyev from its website.

Mr. Davis allegedly continued to defame Mr. Mishiyev on and off the air and social media. Mr. Davis posted an Instagram video in April 2020, boasting that he was "the reason DJ Short-E didn't make it in the last 20 years."

## B. The Legal Battle Begins

In late October 2020, based on the above-described allegations, Mr. Mishiyev sued Beasley and Mr. Davis for defamation and intentional interference with a business relationship. Their accusations of unseemly behavior allegedly "culminated in [Mr. Mishiyev's] YouTube channels being terminated," hindered his employability, and harmed his reputation.

Appellees moved to dismiss the complaint as a meritless SLAPP suit. *See* § 768.295. The trial court denied the motion. Appellees petitioned us to issue a writ of certiorari quashing that order. *Davis v. Mishiyev*, 339 So. 3d 449, 450 (Fla. 2d DCA 2022).

We granted the petition. *Id.* We "conclude[d] that the trial court departed from the essential requirements of law by applying an incorrect motion-to-dismiss standard." *Id.* It should have used the burden-shifting standard used in SLAPP cases. *Id.* at 450, 453; *see generally Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. 2d DCA 2019) (explaining that the SLAPP defendant must "set forth a prima facie case that the Anti-SLAPP statute applies and then" the burden shifts "to the claimant to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without

3

merit' "). We also critiqued the vagueness of Mr. Mishiyev's allegations. *Davis*, 339 So. 3d at 453. We expressed concern that this vagueness hindered the trial court's efforts to assess "whether [Mr.] Davis and Beasley's conduct constituted 'free speech in connection with public issues' and from determining whether [the] complaint was based primarily on protected conduct." *Id.*

### C. Round Two

On remand, Appellees moved to stay discovery pending resolution of the motion to dismiss. Proceeding pro se, Mr. Mishiyev objected. He explained that his former lawyer failed to include adequate allegations in the complaint, he intended to file a more fulsome pleading, and discovery was necessary. Unmoved, the trial court stayed discovery.

In September 2022, Mr. Mishiyev filed an amended complaint. He reprised Mr. Davis' December 2019 YouTube contact.

New allegations followed. For example, he alleged that a former WiLD 94.1 employee heard Mr. Davis "vowing to ruin Mr. Mishiyev's career." Mr. Mishiyev also alleged that his booking agent could not secure a gig for him with a popular nightclub owner. The owner reported that Appellees told him in November 2020 that Mr. Mishiyev was a cocaine user. The owner wanted no "bad publicity."

Mr. Mishiyev also detailed an assault by Mr. Davis. Allegedly, in mid-April 2021, Mr. Mishiyev went to a restaurant in Tampa. Mr. Davis and his entourage waited outside. When Mr. Mishiyev exited, Mr. Davis became enraged and told Mr. Mishiyev, "I will slap the shit out of your Jewish ass." Security personnel prevented a brawl.

Claiming intentional infliction of emotional distress, Mr. Mishiyev described an "outrageous" March 2011 on-air "roast" where Mr. Davis ridiculed Mr. Mishiyev. Mr. Mishiyev also added a cause of action for

4

negligent supervision, alleging that "Beasley has actual or constructive knowledge of the harmful propensities of Mr. Davis."

Appellees, again, moved to dismiss. They argued that the Anti-SLAPP statute barred Mr. Mishiyev's causes of action. They attached to their motion a chart that listed sixteen purportedly defamatory statements explaining why each failed.

The trial court accepted the analysis and dismissed the amended complaint. The trial court concluded that the Anti-SLAPP statute applied because Appellees' alleged radio publications "concerned free speech in connection with a public issue." It observed that "the alleged written or oral statements at issue were made in—or in connection with—[Mr.] Davis' radio broadcasts, or in social media related to such broadcasts." The trial court found further that Mr. Mishiyev sued "to chill [Appellees'] constitutional protected speech" and "failed to show that his claims are 'not without merit.' "

The trial court found that the defamation claims were time-barred, were not properly noticed, were not published by Appellees, and reflected mere industry banter. The trial court also found that Mr. Mishiyev's ancillary torts were barred by Florida's single-action rule; they involved the same facts as the defamation cause of action.

## II. Discussion

### A. The Order Dismissing the Lawsuit

Arguing that the Anti-SLAPP statute does not apply, Mr. Mishiyev tells us that Appellees were not engaged in "free speech in connection with a public issue." Mr. Mishiyev also faults the trial court for minimizing the gravity of his allegations. He observes that Appellees' statements that he was a cocaine user were published within the two-year statute of limitations and that he was not required to send Appellees a section 770.01 presuit notice.

5

We review the dismissal order de novo. *See McQueen v. Baskin*, 377 So. 3d 170, 175 (Fla. 2d DCA 2023).

**1. The Applicability of the Anti-SLAPP Statute**

"[T]he Anti-SLAPP statute requires the trial court to do more than accept as true the factual allegations in the four corners of the complaint and draw all reasonable inferences therefrom in favor of the claimant." *Godwin v. Michelini*, 371 So. 3d 973, 975 (Fla. 2d DCA 2023) (quoting *Gundel*, 264 So. 3d at 314). Rather, the trial court must apply a burden-shifting test. Appellees must "set forth a prima facie case that the Anti-SLAPP statute applies." *See Davis*, 339 So. 3d at 453 (quoting *Gundel*, 264 So. 3d at 314).[3] Then, Mr. Mishiyev must "demonstrate that [his causes of action] are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit.' "[4] *See id.* (quoting *Gundel*, 264 So. 3d at 314).

---

[3] The Third District certified conflict with *Gundel* in *Lam v. Univision Communications, Inc.*, 329 So. 3d 190, 199 (Fla. 3d DCA 2021). *See* art. V, § 3(b)(4), Fla. Const. The Third District concluded that "because the plain language of Florida's Anti-SLAPP statute does not shift the burden to Plaintiffs to establish that their claims have merit, we decline to follow the approach in *Gundel* and add to the statute that which is not in its text." *Lam*, 329 So. 3d at 197.

[4] Notably, this burden-shifting test does not shift the burden of proof; that always remains with Mr. Mishiyev. *See generally Leonetti v. Boone*, 74 So. 2d 551, 553 (Fla. 1954) ("Statutes of the various states contain numerous enactments creating or declaring presumptions or specifying that certain facts shall constitute prima facie evidence of other facts, the effect of which is to relieve the party in whose favor they operate of the necessity of producing evidence upon an issue and cast upon the other party the burden of going forward with the evidence. They do not, however, shift the burden of proof, but simply permit one to make a prima facie case in a way that he could not make it without the statute." (quoting 20 Am. Jur. 136, *Evidence*, § 133)).

Undisputedly, Florida's Anti-SLAPP statute protects the right to exercise "free speech in connection with public issues . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution."  § 768.295(1).  "[F]ree speech in connection with public issues" is

> any written or oral statement *that is protected under applicable law* and is made before a governmental entity in connection with an issue under consideration or review by a governmental entity, *or is made in or in connection with a* play, movie, television program, *radio broadcast,* audiovisual work, book, magazine article, musical work, news report, *or other similar work.*

§ 768.295(2)(a) (emphasis added).  As relevant here, a statement implicates public speech if it "*is made in or in connection with a . . . radio broadcast . . . or other similar work.*"  *Id.*  Appellees must present a prima facie case that the statements are protected by the First Amendment.  *See id.*; *McQueen,* 377 So. 3d at 176 ("The legislature tied the protections of the Anti-SLAPP statute to speech 'protected' by the First Amendment of the United States Constitution and article I, section 5, of the Florida Constitution; and it clarified that the prohibition against lawsuits challenging protected speech applied only to claims 'without merit and primarily because' of protected speech.").

    a. <u>Public Speech</u>

Free speech made in connection with public issues, in pertinent part, merely requires a showing that the public speech is contained in or was made in connection with one of the listed media formats or "other similar modes for widely disseminating protected First Amendment

7

speech."[5]  *See WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 562 (Fla. 4th DCA 2019) (Gross, J., concurring specially) (citing Samuel J. Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, 90 Fla. B.J. 16, 22 (Nov. 2016)); *see also* § 768.295(2)(a).

Yet the trial court reached too far to find that all of the alleged defamatory statements were protected.[6]  The trial court assumed that the statements reflected a mere public feud carried out on air and in related media.

But not all of the alleged statements were made on social media or in a radio broadcast.  At a minimum, Mr. Mishiyev alleged that Appellees

---

[5] Presumably, the legislature intended for any statement that is made in or connected to a form of media to have public significance for purposes of the first part of the burden-shifting test:

> Notably, the staff analysis written before and during the bill's committee review construed the language in this manner:

> The bill does not appear to require that speech made through these forms of media relate to a "public issue."  If the [l]egislature intends to link the speech protections provided in the bill to the discussion of public issues or participation in government, it may wish to revise the bill accordingly.

> The legislature chose not to change the broad language or to otherwise require a special showing of "public issue."  This clear legislative intent further reaffirms the plain language of the statute bypassing any separate showing.

Samuel J. Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, 90 Fla. B.J. 16, 20 (Nov. 2016) (alteration in original) (citing Bill Analysis and Fiscal Impact Statement dated March 18, 2015, paragraph VII at 3).

[6] Seemingly, Appellees believe that any statement made by Mr. Davis is protected by the Anti-SLAPP statute because he is a broadcaster.  They ignore that the speech *itself* must be made in connection with a radio broadcast.  *See* § 768.295(2)(a).

made defamatory statements to YouTube in December 2019 and to the nightclub owner in November 2020.

b. Protected Speech

The trial court accepted Appellees' position that the alleged defamatory statements were "nothing more than the typical banter expected in the radio industry" and were "rhetorical hyperbole" protected by the First Amendment. *See generally McQueen*, 377 So. 3d at 177 ("Whether a published statement is a protected expression of pure opinion versus an actionable expression of fact or mixed opinion and fact poses a question of law."). This assessment missed the mark.

The amended complaint describes conduct not protected by the First Amendment. For example, Mr. Davis' alleged threat to "slap the shit out of" Mr. Mishiyev earns no First Amendment protection. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. . . . 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' " (footnotes omitted) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 309, 310 (1940))); *Fox v. Hamptons at Metrowest Condo. Ass'n*, 223 So. 3d 453, 457 (Fla. 5th DCA 2017) ("Freedom of speech does not extend to obscenity, defamation, fraud, incitement, true threats, and speech integral to criminal conduct." (citing *United States v. Cassidy*, 814 F. Supp. 2d 574, 582-83 (D. Md. 2011))).

9

We also stress that defamation "is not constitutionally protected speech." *McQueen*, 377 So. 3d at 176. A defamation claim has five elements:

> (1) publication, (2) of a false statement, (3) with knowledge or reckless disregard as to the falsity (for public figures) or negligence (for private figures), (4) which causes actual damages, and (5) is "defamatory." *See Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). The Fourth District explained that a "communication is 'defamatory' if it tends to harm the reputation of another as to lower him or her in estimation of community or deter third persons from associating or dealing with the defamed party." *See Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002).

*Id.* Appellees cast the statements as "rhetorical hyperbole" and opinion. They deny that they published some of the statements. They contend that Mr. Mishiyev did not allege actual malice.

The trial court found that Appellees did not publish some of the alleged defamatory statements. Unfortunately, it did not identify which ones. But it seemingly agreed with Appellees' chart. That chart identified eight allegedly defamatory statements that they deny publishing.

The allegations in the amended complaint refute that claim. For example, Appellees deny that they published statements to the nightclub owner. But Mr. Mishiyev, for pleading purposes, sufficiently alleged facts showing such a publication. *See generally Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (explaining that a defamatory statement becomes actionable when the defendant publishes or communicates that statement to a third person).

As for actual malice, whether Mr. Mishiyev is a public figure is a question of law. *See Saro Corp. v. Waterman Broad. Corp.*, 595 So. 2d

10

87, 89 (Fla. 2d DCA 1992) (citing *Rosenblatt v. Baer*, 383 U.S. 75 (1966)). The trial court did not squarely address this issue.[7] The trial court highlighted, in a footnote, that Mr. Mishiyev claimed to be a popular, well-known DJ. On our record, we assume that Mr. Mishiyev is a public figure who must show actual malice.[8]

"Actual malice is proven by evidence of either that (a) [Appellees] published the[] statements knowing them to be false at the time they were made or (b) [Appellees] recklessly disregarded the truth or falsity of these statements at the time they were made." *See Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001) (citing *Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230 (11th Cir. 1999)). According to the amended complaint, Mr. Davis admitted to crippling Mr. Mishiyev's career. Mr. Mishiyev publicly promoted his drug-free lifestyle, and allegedly, Mr. Davis knew this. Nevertheless, Mr. Davis allegedly schemed to portray Mr. Mishiyev as a drug user. We think that Mr.

_____

[7] Typically, whether a plaintiff is a public or private figure should be one of the first issues decided by the trial court. *See, e.g.*, *Mastandrea v. Snow*, 333 So. 3d 326, 327-28 (Fla. 1st DCA 2022) ("To determine whether the councilman's lawsuit had merit, the trial court first had to determine whether the councilman was a public figure because a different standard applies to public figures. If the plaintiff is a public figure, he must show that the defendant made the statements with actual malice, which has been defined as knowing the statements were false at the time they were made or making the statements with a reckless disregard of the truth. If the plaintiff is not a public figure, he must show the defendant made the statements negligently." (citing *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002))).

[8] Some opine that proving that a defamatory statement was made with actual malice poses an "almost impossible" burden to meet. *Mastandrea*, 333 So. 3d at 328 (B.L. Thomas, J., concurring). They believe that the Constitution does not require this heightened scrutiny. *Id.* at 329. We are bound, however, to follow current case law. *See id.* at 328.

Mishiyev made adequate allegations of actual malice. And, given that the trial court stayed discovery, we question whether Mr. Mishiyev was able to fully explore the relevant facts. *Cf. McQueen*, 377 So. 3d at 176 n.10 ("The second, third, and fourth elements [of defamation] often pose factual questions that, in the case at bar, the parties could not explore in depth due to the court's discovery stay. It cannot be said that there were no genuine issues of material fact in dispute such that Ms. Baskin was entitled to judgment as a matter of law on any of those elements of her defamation claim.").

Finally, Mr. Mishiyev alleged facts that if proven, could be defamatory as a matter of law. Appellees allegedly claimed that Mr. Mishiyev infringed copyrighted material and used illegal drugs. Such facts hardly appear as "rhetorical hyperbole" or opinion. The cases cited by the trial court on this point are inapposite. *See, e.g., Pullum v. Johnson*, 647 So. 2d 254, 258 (Fla. 1st DCA 1994); *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002).

In *Pullum*, the First District concluded that a statement calling Pullum a "drug pusher" could not "reasonably be interpreted as stating 'actual facts' about Pullum's illegal association with drugs" because Johnson was using the "exaggerated hyperbolic language to emphasize his objection to the proposed ordinance amendments that would make Santa Rosa a 'wet' county." *Pullum*, 647 So. 2d at 258. Similarly, in *Horsley*, Rivera's statement that Horsley was an accomplice to murder was nonliteral rhetorical hyperbole protected by the First Amendment. *See Horsley*, 292 F.3d at 702 (reasoning that "no reasonable viewer would have concluded that Rivera was literally contending that Horsley could be charged with a felony in connection with Dr. Slepian's murder" where "the record indicates that Rivera used those words only to convey the view that Horsley was morally responsible for Slepian's death").

12

Unlike *Pullum* and *Horsley*, where the challenged statements were made in connection with a broader public debate, the context of Appellees' alleged statements suggest no nonliteral or figurative understanding. If true, the allegations relating to copyright infringement and drug use caused Mr. Mishiyev's ban from YouTube. Certainly, claims of illegal drugs would also expose Mr. Mishiyev to opprobrium. *See generally Pullum*, 647 So. 2d at 258; *cf., e.g., Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. 4th DCA 2016) ("[A] publication is libelous per se, or actionable per se, if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." (alteration in original) (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953))).

### 2. Statute of Limitations

The trial court found that "almost all the statements are time-barred by the two-year statute of limitations." *See* § 95.11(4)(g). The trial court failed to identify these statements.

At least two allegedly defamatory statements appear timely. One, Mr. Mishiyev described statements made to the nightclub owner in November 2020. *See* § 95.11(4)(g); *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174 (Fla. 5th DCA 2016). Two, Mr. Mishiyev alleged that Appellees made defamatory statements to YouTube in December 2019. The trial court did not explicitly address whether that allegation relates back to his initial 2020 complaint, wherein Mr. Mishiyev referenced slanderous statements resulting in the termination of his YouTube channels. *See generally Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So. 3d 41, 47 (Fla. 2017) ("Although additional allegations of fact were inserted into the complaint as it progressed through its steps,

13

and the legal theories of recovery were supplemented and modified, the substantive factual situation remained the same as that found in the original complaint . . . ." (quoting *Flores v. Riscomp Indus., Inc.*, 35 So. 3d 146, 147 (Fla. 3d DCA 2010))).

### 3. Presuit Notice

Mr. Mishiyev asserts that he was not required to send Appellees a presuit notice. The trial court failed to specify the statements for which notice was needed.

Section 770.01 provides:

> Before any civil action is brought for *publication or broadcast, in a newspaper, periodical, or other medium*, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

(Emphasis added.) Appellees contend that they were entitled to presuit notice because the statements were made by a radio broadcaster.

Although Mr. Davis is a broadcaster, not every statement he makes falls within the purview of section 770.01. We must look to whether the defamatory statements were made in a medium that is part of the traditional news media or press. *See McQueen*, 377 So. 3d at 178 ("[I]t suffices to observe that the media defense under section 7[7]0.01 is not typically available for 'hyperbole and mental impressions'; rather, the statute serves to protect the dissemination of news and news commentary."); *Mazur v. Ospina Baraya*, 275 So. 3d 812, 817 (Fla. 2d DCA 2019) ("To determine whether a defendant's publication falls 'within the purview of the prescribed "other medium" entitled to presuit notice, we . . . [must] determine whether the [defendant's publication] is operated to further the free dissemination of information or disinterested

14

and neutral commentary or editorializing as to matters of public interest.' " (second alteration in original) (quoting *Comins v. Vanvoorhis*, 135 So. 3d 545, 557 (Fla. 5th DCA 2014))).

The allegedly defamatory statements made in December 2019 and November 2020, for example, were not made for the purpose of disseminating information or commentary or editorializing on matters of public interest. As a result, the statements do not fall within the "other medium" language of section 770.01. Thus, Appellees were not entitled to notice for those purported statements.

## B. The Single-Action Rule & Ancillary Torts

Mr. Mishiyev urges that the trial court erroneously applied the single action rule. He tells us that "the ancillary torts involved Battery, Emotional Distress and have very little to do with the allegations that support the Defamation cause of action." Appellees counter that the trial court acted properly "[b]ecause the same set of operative facts allegedly supported all his claims, and . . . [the claims were] designed to account for the same alleged harm as the defamation claim." Alternatively, they assert that the ancillary tort claims otherwise lacked merit.

"In Florida, a single publication gives rise to a single cause of action." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (citing *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975)). The single publication/single action rule "does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based." *Id.* (citing *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Fla. 3d DCA 2000)). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Id.* (quoting *Messenger v. Gruner + Jahr USA Publ'g*, 994 F.

15

Supp. 525, 531 (S.D.N.Y. 1998)). The "rule precludes the recasting of defamation claims as additional, distinct causes of action in tort if all of the claims arise from same defamatory publication." *Int'l Sec. Mgmt. Grp., Inc. v. Rolland*, 271 So. 3d 33, 48 (Fla. 3d DCA 2018); *see also Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992) ("We thus find that the successful invocation of a defamation privilege *will* preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication. However, that privilege will not prevent recovery upon separate causes of action which are properly pled upon the existence of independent facts.").

The amended complaint suggests that some of these ancillary torts are not based solely on the allegedly defamatory publications. For example, the negligent supervision cause of action is made against Beasley, which is not the subject of Mr. Mishiyev's defamation claim against Mr. Davis. Further, the alleged assault incident is untethered to any broadcast of defamatory statements.

The trial court's findings about the single action rule indicate that it may have overlooked various allegations. On remand, it should reexamine the sufficiency of Mr. Mishiyev's allegations as to the ancillary tort counts.

### C. Stayed Discovery

The trial court had discretion to stay discovery. *Cf. Bank of Am., N.A. v. De Morales*, 314 So. 3d 528, 531 (Fla. 3d DCA 2020) ("Given the purpose of the immunity asserted, the potentially dispositive nature of the motion, and the circumstances, the trial court abused its discretion in failing to stay discovery until it ruled on the bank's motion to dismiss."). After all, the Anti-SLAPP statute exists to forestall litigation chilling free speech rights. *Cf. Gundel*, 264 So. 3d at 311 ("In the context of the Anti-SLAPP statute, the harm that results from the court's

16

improper denial of a motion to dismiss or in its failure to rule on pending motions for summary judgment and judgment on the pleadings is precisely the harm that the Anti-SLAPP statute seeks to prevent—unnecessary litigation."). However, our disposition will necessarily require the trial court, on remand, to reexamine its stay order.

### III. Conclusion

For the reasons explained above, we reverse the trial court's orders dismissing Mr. Mishiyev's amended complaint and staying discovery. On remand, the trial court shall conduct further proceedings consistent with this opinion.

Moreover, to the extent this decision directly conflicts with *Lam*, we certify conflict. *See* art. V, § 3(b)(4), Fla. Const.

Reversed and remanded; conflict certified.


KHOUZAM and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.